Serge F. Petroff, Esq.
Steven Amshen, Esq.
Christopher Villanti, Esq.
Yehuda C. Morgenstern, Esq.
PETROFF AMSHEN LLP
1795 Coney Island Avenue, 3rd Floor
Brooklyn, New York 11230
(718) 336-4200

*Counsel for Plaintiff, Petroff Amshen LLP*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETROFF AMSHEN LLP,<br><br>                    Plaintiff,<br><br>        v.<br><br>ALFA REHAB PT PC, CAMBRIDGE CLARENDON FINANCIAL SERVICES LLC, BRUNSWICK BANK & TRUST COMPANY, JAMES CHENG, CHUNG KWONG YAU, CAI FENG TAN, THE SAMANTHA LEE FAMILY TRUST, ADVANCED REHAB CARE PT PC, JOSEPHINE BELLONI, ANNAROSE ROTONDI TRUST, AGYAL PHYSICAL THERAPY PLLC, WEI JI LI, ASSEM PHYSICAL THERAPY PC, LIU YU, KAI HO RICHARD TANG, BARAKAT PT PC, AMRO MAHMOUD SHOKRY BARAKAT, DIANA FERNANDEZ, CHRISTIAN FERNANDEZ, WISDOM PHYSICAL THERAPY PC, HATEM E ABOUHASSAN, KISHORE KANDURI A/K/A KISHORE K KANDURI, RADWA PT PC, MOHAMED M. ELMANDOUH, MD, ULTIMATE CARE CHIROPRACTIC PC, GRAIG GRANOVSKY, GRAIG GRANOVSKY CHIROPRACTIC PC, THIRD AVENUE CHIROPRACTIC CARE PC, NATHANIEL MAZZA, THERAKINEMATICE PT PC, LEGASPI MADELINE, PHYSIO SOLUTIONS PT PC, REHAB CONCEPTS PT PC, SIGNIFICANT CARE PT PC, SAYED F. | Docket No.: _____ (   )<br><br><br>**Plaintiff Demands a Trial by Jury** |

SAYED, NBC HEALTH PHYSICAL THERAPY
PC, NATHANIEL BREX ROA CAYETUNA,
LITE CARE REHAB PT PC, ISLAM BEKHET,
EXTENSIVE CARE PT PC, DANIMARK
PHYSICAL THERAPY PC, ANNA
MEYERZON, DJ DRUG SERVICES LLC,
ROMAN SHAMALOV, RIVER CHEMIST
CORP, MMA PHYSICAL THERAPY PT PC,
MAZED ABDEL MAGID, MD, JMP REHAB
CARE PT, HARKIRTAN SINGH, DALBIR
KAUR, HILLSIDE FAMILY CHIROPRACTIC
PC, HOWARD KESSLER, MD, FIRST HAND
PHYSICAL THERAPY PC, ABDELHAMID
ABOURYA A/K/A ABDELHAMID
MAHMOUD ABOURYA, EYE ON WELL-
BEING ACUPUNCTURE PC, OATES DEVAN,
CORE BASICS PC, KHALED NASR,
COMMUNITY WELLNESS PHARMACY INC,
RAKMIN ILYABAYEV, COMFORT TOUCH
PT PC, FERRIN MANUEL, CANARSIE
WELLNESS PHARMACY INC, JEREMY
JAMES SCHIES, BODY ACUPUNCTURE
CARE PC, OKSANA PODHAYETSKA,
BRIGHT STAR REHAB PT PC, MOHAMED Y
EL SAIDY, BL HEALTHY LIFE
ACUPUNCTURE PC, ZENON
KURKAREWICZ, BRONX CHIROPRACTICE
REHABILITATION PC, SEAN DAIMAND,
BEST TOUCH PT PC, MANHATTAN'S HANDS
OF HOPE PT PC, MOTAZ M EBEIDO, VITAL
MERIDIAN ACUPUNCTURE PC, LUDMILA
BOBCHYNSKA MD, MEDS4DAYS
PHARMACY INC, BRITTNEY COLEMAN,
PHYSICAL THERAPY REHAB PC,
ACUPUNTURE HEALTHCARE PLAZA I PC,
LAW OFFICES OF DOMINICK W. LAVELLE
PC, DOMINICK LAVELLE A/K/A DOMINICK
W LAVELLE, ELSANAA PT PC, MAHMOUD
ELSANAA, ZHONG SU, LIBING SU, JOHN
DOE #1 through JOHN DOE #10,

Defendants.

## COMPLAINT

Plaintiff Petroff Amshen LLP ("Petroff Amshen"), by and through its counsel, Petroff Amshen LLP as and for its Complaint against the Defendants Alfa Rehab PT PC, Cambridge Clarendon Financial Services LLC, Brunswick Bank & Trust Company, James Cheng, Chung Kwong Yau, Cai Feng Tan, The Samantha Lee Family Trust, Advanced Rehab Care PT PC, Josephine Belloni, Annarose Rotondi Trust, Agyal Physical Therapy PLLC, Wei Ji Li, Assem Physical Therapy PC, Liu Yu, Kai Ho Richard Tang, Barakat PT PC, Amro Mahmoud Shokry Barakat, Diana Fernandez, Christian Fernandez, Wisdom Physical Therapy PC, Hatem E Abouhassan, Kishore Kanduri aka/ Kishore K Kanduri, Radwa PT PC, Mohamed M. Elmandouh, MD, Ultimate Care Chiropractic PC, Graig Granovsky, Graig Granovsky Chiropractic PC, Third Avenue Chiropractic Care PC, Nathaniel Mazza, Therakinematic PT PC, Legaspi Madeline, Physio Solutions PT PC, Rehab Concepts PT PC, Significant Care PT PC, Sayed F Sayed, NBC Health Physical Therapy PC, Nathaniel Brex Roa Cajetan, Lite Care Rehab PT PC, Islam Bekhet, Extensive Care PT PC, Danimark Physical Therapy PC, Anna Meyerezon, DJ Drug Services LLC, Roman Shamalov, River Chemist Corp, MMA Physical Therapy PT PC, Mazen Abdel Magid, MD, JMP Rehab Care PT PC, Harkirtan Singh, Dalber Kaur, Hillside Family Chiropractic PC, Howard Kessler, MD, First Hand Physical Therapy PC, Abdelhamid Abourya a/k/a Abdelhamid Mahmoud Abourya, Eye On Well-Being Acupuncture PC, Oates Devan, Core Basics PC, Khaled Nasr, Community Wellness Pharmacy Inc, Rakmin Ilyabayev, Comfort Touch PT PC, Ferrin Manuel, Canarsie Wellness Pharmacy Inc, Jeremy James Schies, Body Acupuncture Care PC, Oksana Podhayetska, Bright Star Rehab PT PC, Mohamed Y El Saidy, BL Healthy Life Acupuncture PC, Ludmila Bodchynska, Zenon Kurkarewicz, Bronx Chiropractic Rehabilitation PC, Sean Daimond, Best Touch PT PC, Manhattan's Hands of Hope PT PC, Motaz M Ebeido,

Vital Meridian Acupuncture PC, Ludmila Bobchynska MD, Meds4Days Inc, Brittney Coleman, Physical Therapy Rehab PC, Acupuncture Healthcare Plaza I PC, Law Offices of Dominick W. Lavelle PC, Dominick Lavelle a/k/a Dominick W Lavelle, Elsanaa PT PC, Zhong Su and Libing Su, (collectively the "Defendants"), hereby allege as follows:

## NATURE OF THE ACTION

1.     This action is about a criminal enterprise orchestrated by the Defendants relating to the laundering of illicitly obtained sums in excess of $600,000.000, whereby unbeknownst to Petroff Amshen, the Defendants fraudulently used the name and reputation of Petroff Amshen as a vehicle in their nefarious and illegal scheme, and thereby exposed Petroff Amshen to liability.

2.     The Defendants are comprised primarily of chiropractors, physical therapists and acupuncturists in the State of New York and the State of New Jersey, as well as an attorney and an individual recently convicted at trial for money laundering charges.

3.     The Defendants conspired together via more than 50 corporate entities in their control, and generated more than 120 negotiable instruments, issued and signed by the Defendants as makers of said checks, all made payable to Petroff Amshen. The Defendants distributed the checks amongst themselves – not to Petroff Amshen – and fraudulently endorsed the checks via the repeated forging of signatures of Petroff Amshen. Subsequently, the Defendants presented said checks to a devious check cashier in New Jersey.

4.     Thereby, substantial sums were transferred amongst the Defendants, from their corporate accounts that were then converted to liquid assets, *i.e.,* cash.

5.     Petroff Amshen had absolutely no knowledge of the entire enterprise and that it was being used as an apparent conduit for Defendants' illegal laundering of illicitly gained money.

6.      Moreover, in furtherance of the scheme and in order to substantiate the fraud, the Defendants created false W-9 forms claimed to be issued by Petroff Amshen to the Defendants and used the same to hold themselves out as having authority to act on behalf of Petroff Amshen. Knowingly and with intent to further perpetrate illegal activity, the Defendants wrote on the memo line of the checks, fraudulent statements such as "legal fees" or "legal services" to create the illusion that the check were actually issued to Petroff Amshen.

7.      Upon information and belief, the repeated use of one specific check casher was not a mere happenstance; it was integral for the overall scheme. The check casher located in New Jersey was aware of the scheme from the outset and otherwise would not have allowed for multiple checks issued from more than 50 different entities in New York to a single law firm, without raising red flags and suspicion.

8.      The check casher Defendant did not do basic due diligence; to *wit*, it did not verify that the Employee Identification Number on the fraudulent W-9 ostensibly issued by Petroff Amshen was patently incorrect and erroneous. Also, it neglected to call the publicly available phone number of Petroff Amshen to verify whether the individuals purportedly depositing checks on its behalf, were indeed associated with Petroff Amshen.

9.      Moreover, upon information and belief, the Check Casher received remuneration and compensation for its role in the scheme.

10.      Petroff Amshen had absolutely no knowledge of the existence of the enterprise, and conduct and activities of the Defendants; was never retained by any of the Defendants to provide legal services; never communicated with any of the Defendants regarding the fraudulent checks or any checks; had no knowledge of the existence of the scheme and existence of the enterprise due to the subterfuge and acts of concealment of the Defendants until a recent detection of same in an

unrelated action; the fraudulent checks were never signed or endorsed by an owner, officer, and/or agent of Petroff Amshen; and Petroff Amshen did not receive any of the funds that were generated by the scheme.

11.     The criminal enterprise was comprised of all of the Defendants, each of which played a pivotal role in advancing its purpose and common interest. The crimes of the enterprise include, *inter alia,* tax evasion and money laundering, as well as violations of state penal laws criminalizing the falsification of business records, forgery and identity theft statutes, independent of the underlying criminal activity that generated the proceeds.

12.     Accordingly, Petroff Amshen seek a declaration that at all relevant times:

(a)     Petroff Amshen was never retained by any of the Defendants;

(b)     Petroff Amshen had no knowledge of the existence of the Defendants;

(c)     Petroff Amshen had no knowledge of the criminal conduct and activities of the Defendants;

(d)     Petroff Amshen did not have any communication with the Defendants regarding the checks;

(e)     The checks were fraudulent, as the checks were never signed or endorsed by an owner, officer, and/or agent of Petroff Amshen;

(f)     Petroff Amshen did not receive any of the funds that were generated by the checks, directly or indirectly;

(g)     Any W-9 or 1099 Form, in the past and in the future, that ostensibly reflects that Petroff Amshen employed or used the services of any of the Defendants is a forgery and thereby null and void; and

(h)     Any check, in the past and in the future, issued by the Defendants and made payable to Petroff Amshen is a nullity and Petroff Amshen is not a holder in due course of any such check.

13.     The Defendants fall into the following categories:

(a)     Alfa Rehab PT PC, Advanced Rehab Care PT PC, Assem Physical Therapy PC, Barakat PT PC, Wisdom Physical Therapy PC, Radwa PT PC, Ultimate Care Chiropractic PC, Graig Granovsky Chiropractic PC, Third Avenue Chiropractic Care PC, Therakinematic PT PC, Physio Solutions PT PC, Rehab Concepts PT PC, Significant Care PT PC, NBC Health Physical Therapy PC, Nathaniel Brex Roa Cayetuna, Lite Care Rehab PT PC, Extensive Care PT PC, Danimark Physical Therapy PC , DJ Drugs Services LLC, River Chemist Corp., MMA Physical Therapy PT PC, JMP Rehab Care PT PC, Hillside Family Chiropractic PC, First Hand Physical Therapy PC, Eye On Well-Being Acupuncture PC, Core Basics PC, Community Wellness Pharmacy Inc, Comfort Touch PT PC, Canarsie Wellness Pharmacy Inc, Body Acupuncture Care PC, Bright Star Rehab PT PC, Bronx Chiropractic Rehabilitation PC, Best Touch PT PC, Manhattan's Hands of Hope PT PC, Meds4days Pharmacy Inc, Physical Therapy Rehab PC, Acupuncture Healthcare Plaza I PC, The Law Offices of Dominick W Lavelle, PC and Elsanaa PT PC (collectively the "Corporate Defendants"), are New York State Corporations that issued the subject checks.

(b)     James Cheng, Chung Kwong Yau, Cai Feng Tan, Wei Ji Li, Amro Mahmoud Shokry Barakat, Diana Fernandez, Christian Fernandez, Hatem E Abouhassan Kishore Kanduri a/k/a Kishore K. Kanduri, Mohamed M. Elmandouh, MD, Nathaniel Mazza, Legaspi Madeline, Sayed F Sayed, Islam Bekhet, Anna Meyerzon, Roman Shamalov, Mazen Abdel Magid, MD, Harkirtan Singh, Dalber Kaur, Howard Kessler, MD, Abdelhamid Abourya, Oates Devan, Khaled

Nasr, Rakmin Ilyabayev, Ferrin Manuel, Jeremy James Schies, Oksana Podhayetska, Mohamed Y El Saidy, Sean Diamond, Motaz M Ebeido, Brittney Coleman, Dominick Lavelle a/k/a Dominick W Lavelle, Mahmoud Elsanaa, Zhong Sue and Libing Su (collectively the "Individual Defendants"), are citizens and residents of the State of New York, who upon information and belief, control the Corporate Defendants, affixed their signatures upon the checks on behalf of the Corporate Defendants, fraudfully endorsed the checks on behalf of Petroff Amshen and received the cash generated by depositing the checks at the Check Casher in New Jersey.

(c)  The Check Casher Defendant is known as Cambridge Clarendon Financial Services, LLC located in East Brunswick, New Jersey and is a business that engages in the cashing of checks and it operates by endorsing checks it receives to pay to the order of Brunswick Bank & Trust Company, a Bank situated nearby.

14.  As discussed below, Defendants at all relevant times had knowledge that Petroff Amshen (i) did not provide legal services or any services to the Defendants, (ii) the checks were not issued to Petroff Amshen (iii) no one associated with Petroff Amshen endorsed the checks or presented it for payment and, that (iv) the name of Petroff Amshen was merely used as a conduit to funnel funds amongst the Defendants that they did not want to be public knowledge, as the source of the funds were illegitimate and the Defendants wanted to conceal the sums from the taxing authorities.

15.  The Defendants' fraudulent scheme began as early as January 1, 2016 and has continued uninterrupted until the present day.

16.  Defendant Jeremy James Schies is been subject of conviction regarding, *inter alia,* money laundering, in the Eastern District of the State of New York, Case number 2:18-cr-00602 and is now released on $250,000.00 bail pending his sentencing date.

17.     As a result of the Defendants' conduct, Petroff Amshen has been harmed and will continue to be harmed in the near future, especially since at this time, the entire scope of the enterprise has not yet known. Therefore, these matters present issues of sufficient immediacy and reality that warrant a judicial determination.

## THE PARTIES

18.     Plaintiff Petroff Amshen LLP is a domestic Limited Liability Partnership, duly organized and existing under the State of New York, with its principal place of business located in the State of New York.

19.     Defendant Alfa Rehab PT, PC ("Alfa Rehab"), is a New York professional corporation with its principal place of business in New York.

20.     Defendant Cambridge Clarendon Financial Services LLC (the "Check Casher"), is a New Jersey Limited Liability Corporation and functions as a Check Cashier with its principal place of business in New Jersey.

21.     Defendant Brunswick Bank & Trust Company (the "Brunswick Bank"), is a Bank chartered in the State of New Jersey with its headquarters located at New York.

22.     Defendant James Cheng ("Cheng"), resides in and is a citizen of the State of New York.

23.     Defendant Chung Kwong Yau ("Yau"), resides in and is a citizen of the State of New York.

24.     Defendant Cai Feng Tan ("Tan"), resides in and is a citizen of the State of New York.

25.     Defendant The Samantha Lee Family Trust (the "Samantha Trust"), is a trust created under the laws of the State of New York.

26.     Defendant Advanced Rehab Care PT PC ("Advanced Rehab"), is a New York professional corporation with its principal place of business in New York.

27.     Defendant Josephine Belloni ("Belloni"), resides in and is a citizen of the State of New York.

28.     Defendant Annarose Rotondi Trust (the "Annarose Rotondi Trust"), is a trust created under the laws of the State of New York.

29.     Defendant Agyal Physical Therapy PLLC ("Agyal Physical"), is a New York professional services limited liability company with its principal place of business in New York.

30.     Defendant Wei Ji Li ("Wei"), resides in and is a citizen of the State of New York.

31.     Defendant Assem Physical Therapy PC ("Assem Physical"), is a New York professional corporation with its principal place of business in New York.

32.     Defendant Liu Yu ("Yu"), resides in and is a citizen of the State of New York.

33.     Defendant Kai Ho Richard Tang ("Tang"), resides in and is a citizen of the State of New York.

34.     Defendant Barakat PT PC ("Barakat PC"), is a New York professional corporation with its principal place of business in New York.

35.     Defendant Amro Mahmoud Shokry Barakat ("Barakat"), resides in and is a citizen of the State of New York.

36.     Defendant Diana Fernandez ("Fernandez"), resides in and is a citizen of the State of New York.

37.     Defendant Christian Fernandez ("Fernandez"), resides in and is a citizen of the State of New York.

38.     Defendant Wisdom Physical Therapy, PC ("Wisdom"), is a New York professional corporation with its principal place of business in New York.

39.     Defendant Hatem E Abouhassan ("Abouhassan"), resides in and is a citizen of the State of New York.

40.     Defendant Kishore Kanduri aka/ Kishore K. Kanduri ("Kanduri"), is an individual who is a resident of the State of New Jersey.

41.     Defendant Radwa PT PC ("Radwa PC"), is a New York professional corporation with its principal place of business in New York.

42.     Defendant Mohamed M. Elmandouh ("Elmandouh"), resides in and is a citizen of the State of New York.

43.     Defendant Ultimate Care Chiropractic PC ("Ultimate"), is a New York professional corporation with its principal place of business in New York.

44.     Defendant Graig Granovsky ("Granovsky"), resides in and is a citizen of the State of New York.

45.     Defendant Graig Granovsky Chiropractic PC ("Granovsky PC"), is a New York professional corporation with its principal place of business in New York.

46.     Defendant Third Avenue Chiropractic Care PC ("Third Avenue"), is a New York professional corporation with its principal place of business in New York.

47.     Defendant Nathaniel Mazza ("Mazza"), is an individual who is a resident of the State of New Jersey.

48.     Defendant Therakinematic PT PC ("Therakinematic"), is a New York professional corporation with its principal place of business in New York.

49.     Defendant Legaspi Madeline ("Madeline"), resides in and is a citizen of the State of New York.

50.     Defendant Physio Solutions PT PC ("Physio"), is a New York professional corporation with its principal place of business in New York.

51.     Defendant Rehab Concepts PT PC ("Rehab"), is a New York professional corporation with its principal place of business in New York.

52.     Defendant Significant Care PT PC ("Significant"), is a New York professional corporation with its principal place of business in New York.

53.     Defendant Sated F Sayed ("Sayed"), resides in and is a citizen of the State of New York.

54.     Defendant NBC Health Physical Therapy PC ("NBC"), is a New York professional corporation with its principal place of business in New York.

55.     Defendant Nathaniel Brex Roa Cayetuna ("Cayetuna"), resides in and is a citizen of the State of New York.

56.     Defendant Lite Care Rehab PT PC ("Lite"), is a New York professional corporation with its principal place of business in New York.

57.     Defendant Islam Bekhet ("Bekhet"), resides in and is a citizen of the State of New York.

58.     Defendant Extensive Care PT PC ("Extensive"), is a New York professional corporation with its principal place of business in New York.

59.     Defendant Danimark Physical Therapy PC ("Danimark"), is a New York professional corporation with its principal place of business in New York.

60.     Defendant Anny Meyerzon ("Meyerzon"), resides in and is a citizen of the State of New York.

61.     Defendant DJ Drugs Services LLC ("DJ"), is a New York Limited Liability Corporation with its principal place of business and residence of its members, in the State of New York.

62.     Defendant Roman Shamalov ("Shamalov"), resides in and is a citizen of the State of New York.

63.     Defendant River Chemist Corporation ("River"), is a New York State Corporation with its principal place of business in the State of New York.

64.     Defendant MMA Physical Therapy PT PC ("MMA"), is a New York professional corporation with its principal place of business in New York.

65.     Defendant Mazen Abdel Magid ("Magid"), resides in and is a citizen of the State of New York.

66.     Defendant JMP Rehab Care PT PC ("JMP"), is a New York professional corporation with its principal place of business in New York.

67.     Defendant Harkirtan Singh ("Singh"), resides in and is a citizen of the State of New York.

68.     Defendant Dalbir Kaur ("Kaur"), resides in and is a citizen of the State of New York.

69.     Defendant Hillside Family Chiropractic PC ("Hillside"), is a New York professional corporation with its principal place of business in New York.

70.     Defendant Howard Kessler, MD ("Kessler"), resides in and is a citizen of the State of New York.

71.     Defendant First Hand Physical Therapy PC ("First Hand"), is a New York professional corporation with its principal place of business in New York.

72.     Defendant Abdelhamid Abourya ("Abourya"), resides in and is a citizen of the State of New Jersey.

73.     Defendant Eye On Well-Being Acupuncture PC ("Acupuncture"), is a New York professional corporation with its principal place of business in New York.

74.     Defendant Oates Devan ("Devan"), resides in and is a citizen of the State of New York.

75.     Defendant Core Basics PC ("Core"), is a New York professional corporation with its principal place of business in New York.

76.     Defendant Khaled Nasr ("Nasr"), resides in and is a citizen of the State of New York.

77.     Defendant Community Wellness Pharmacy Inc ("Wellness"), is a New York corporation with its principal place of business in the State of New York.

78.     Defendant Rakmin Ilyabayev ("Ilyabayev"), resides in and is a citizen of the State of New York.

79.     Defendant Comfort Touch PT PC ("Comfort"), is a New York professional corporation with its principal place of business in New York.

80.     Defendant Ferrin Manuel ("Manuel"), resides in and is a citizen of the State of New York.

81.     Defendant Canarsie Wellness Pharmacy Inc ("Canarsie Wellness"), is a New York corporation with its principal place of business in New York.

82.     Defendant Jeremy James Schies ("Schies"), is a citizen of the State of Missouri.

83.     Defendant Body Acupuncture Care PC ("BAC"), is a New York professional corporation with its principal place of business in New York.

84.     Defendant Oksana Podhayetska ("Podhayetska"), resides in and is a citizen of the State of New York.

85.     Defendant Bright Star Rehab PT PC ("BSR"), is a New York professional corporation with its principal place of business in New York.

86.     Defendant Mohamed Y El Saidy ("Saidy"), resides in and is a citizen of the State of New York.

87.     Defendant BL Health Life Acupuncture PC ("BL"), is a New York professional corporation with its principal place of business in New York.

88.     Defendant Zenon Kurkarewicz ("Kurkarewicz"), resides in and is a citizen of the State of New York.

89.     Defendant Bronx Chiropractic Rehabilitation PC ("BCR"), is a New York professional corporation with its principal place of business in New York.

90.     Defendant Sean Daimond ("Daimond"), resides in and is a citizen of the State of New York.

91.     Defendant Best Touch PT PC ("BT"), is a New York professional corporation with its principal place of business in New York.

92.     Defendant Manhattan's Hands of Hope PT PC ("MHOH"), is a New York professional corporation with its principal place of business in New York.

93.     Defendant Motaz M Ebeido ("Ebeido"), resides in and is a citizen of the State of New York.

94.     Defendant Vital Meridian Acupuncture PC ("Meridian"), is a New York professional corporation with its principal place of business in New York.

95.     Defendant Ludmila Bodchynska, MD ("Bodchynska"), resides in and is a citizen of the State of New York.

96.     Defendant Meds4days Inc ("MI"), is a New York corporation, with its principal place of business in the State of New York.

97.     Defendant Brittney Coleman ("Coleman"), resides in and is a citizen of the State of New York.

98.     Defendant Physical Therapy Rehab PC ("PTR"), is a New York professional corporation with its principal place of business in New York.

99.     Defendant Acupuncture Healthcare Plaza I PC ("AHP"), is a New York professional corporation with its principal place of business in New York.

100.    Defendant The Law Offices of Dominick W. Lavelle PC ("Lavelle PC"), is a New York Professional Corporation which has its principal place of business in the State of New York.

101.    Defendant Dominick W. Lavelle ("Lavelle"), is a citizen of the State of New York, and practices law at 100 Herricks Rd, Mineola, NY 11501.

102.    Defendant Elsanaa PT PC ("Elasanaa PT"), is a New York Professional Corporation which has its principal place of business in the State of New York.

103.    Defendant Mahmoud Elsanaa ("Elasanaa"), resides in and is a citizen of the State of New York.

104.    Defendant Zhon Su ("Zhon"), resides in and is a citizen of the State of New York.

105.    Defendant Libing Su ("Libing"), resides in and is a citizen of the State of New York.

106.     Upon information and belief, Defendants John Doe #1 through John Doe # 10 are fictitious and unknown to Petroff Amshen, named as persons or entities who may potentially have aided and abetted the conduct described herein.

## JURISDICTION AND VENUE

107.     The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the matter in controversy and intended benefit or the value of the right being protected and the injury being averted exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

108.     Pursuant to 28 U.S.C. § 1331, the Court also has jurisdiction over claims brought under 18 U.S.C. § 1961 et seq, (the Racketeer Influence and Corrupt Organization ["RICO"] Act) because they arise under the laws of the United States.

109.     In addition, Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. §1367.

110.     Declaratory relief is proper pursuant to 28 U.S.C. §§ 2201 and 2202.

111.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Eastern District of New York is the District where the Plaintiff conducts most of its business and where one or more of the Defendants reside and because this is the District where a substantial amount of the activities forming the basis of this Complaint occurred.

## STATEMENT OF FACTS

112.     Upon information and belief, on or about January 1, 2016, the Defendants conspired together to avoid both the detection of their criminal activities and the payment of federal, state and city income taxes via a scheme to funnel funds from the accounts of the Corporate Defendants to the pockets of the Individual Defendants. It was essential to said scheme that the Defendants

did not transfer funds directly amongst themselves and that they apparently utilize an independent and legitimate and reputable intermediary. Accordingly, they opted to use the name of Petroff Amshen on the face of the checks, with the belief that Petroff Amshen would never learn of same.

113.    In furtherance of the conspiracy, and necessary to avoid detection by the relevant governmental agencies – to conceal the criminal source of the funds and to avoid paying taxes on same – the Defendants conspired to issue checks issued to Petroff Amshen and fraudulently endorsed those checks by forging signatures of Petroff Amshen.

114.    The Defendants knew that if the checks would be deposited in a conventional banking institution, the fraud would be uncovered, either at the outset or over the course of time. A reputable banking institution, in accordance with regulatory requirements and due diligence, would require adequate and proper verification that the presenter or presenters of a negotiable interest is indeed an employee of Petroff Amshen. The Defendants were not employed and/or agents of Petroff Amshen nor were they ever associated with Petroff Amshen, and the foregoing would undoubtedly be uncovered by a banking institution that complied with all regulations, including verification of the Employment Identification Number on the subject W-9 forms.

115.    The Defendants knew that if the checks would be deposited directly into a bank account of the Defendants, it would then be traceable to the Defendants; something the Defendants wanted to avoid at all costs. Therefore, necessary to conceal the fraudulent scheme, and to have access to cash, the Defendants conspired to utilize a specific dishonest and unscrupulous check cashing business, namely the Check Cashing Defendant.

116.    Upon information and belief, the Defendants conspired with Defendant Check Chaser because the Check Casher was a member of the criminal enterprise and was amenable and

more than ready, willing and able to be a vehicle and perpetuator of the underlying fraud, solely for its own pecuniary interest.

117.    Upon information and belief, all of the Defendants knew or should have known that the checks that were not actually issued to Petroff Amshen, as Petroff Amshen did not provide services for the Defendants, of any kind.

118.    Upon information and belief, all of the Defendants knew or should have known that the checks that were not actually issued to Petroff Amshen, as none of the Defendants were independent contractors, nor did they provide services of any kind, to Petroff Amshen.

119.    Upon information and belief, all of the Defendants affixed, or caused to be fixed, fraudulent signatures to the checks that would appear to be an endorsement of Petroff Amshen.

120.    Upon information and belief, all the Defendants actually "presented" the check or caused the checks to be presented, to the Check Casher Defendant in New Brunswick, New Jersey.

121.    Upon information and belief, all the Defendants gave fraudulent checks to the Check Casher Defendant in exchange for cash, less the amount the Defendant Check Casher withheld as compensation for its pivotal role in the criminal enterprise.

122.    Upon information and belief, the Defendants Check Casher and Brunswick Bank were aware that the checks were never endorsed by Petroff Amshen.

123.    Upon information and belief, the Defendants Check Casher and Brunswick Bank were aware that the so-called presenter of said checks was never associated with Petroff Amshen.

124.    Upon information and belief, the Defendants Check Cashers and Brunswick Bank were aware that the cash provided will never go to Petroff Amshen; rather it would be used to enrich the coffers of the Defendants, to be dispensed pro rata amongst the Defendants based on a pre-determined amount that was agreed upon by the Defendants.

125.     Upon information and belief, the Check Casher Defendant actually withheld a larger than average percentage of the face value of the checks, independent and addition to its usual fee, as compensation and consideration for the crucial and pivotal rule in its perpetuation and facilitation of the Defendants' criminal enterprise.

126.     Moreover, the Defendants created multiple fraudulent W-9 documents that were purportedly issued by Petroff Amshen, as a means to form a veneer of a legitimate association with Petroff Amshen. The exact scope of the fraudulent creation of official documents, will be exposed during discovery and ultimately at trial, of this action. A copy of a fraudulent W-9 created by the Defendants is attached hereto as Exhibit A.

127.     Upon information and belief, the Defendants filed documents with the Internal Revenue Service that reflects payments made to Petroff Amshen.

128.     Petroff Amshen did not provide any services to the Defendants, and certainly did not create any W-9 for any of the Defendants.

129.     Petroff Amshen was unaware of the entire conspiracy and it did not receive any compensation, pecuniary or otherwise, as a result of the illegal conduct of the Defendants.

130.     Upon information and belief, Petroff Amshen will face, as proximate cause of the Defendants' criminal action, significant tax penalties, in an amount to be determined in the future and during discovery, unless the Court grants the relief sought herein.

131.     Upon information and belief, Petroff Amshen will suffer substantial injury to its reputation as a result of the Defendants' conduct in which the name, business reputation and identity of Petroff Amshen was used to conduct a fraudulent scheme.

## FIRST CAUSE OF ACTION
### Against All Defendants
### (Declaratory Judgment – 28 U.S.C. §§ 2201 & 2202)

132.    Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

133.    There is an actual controversy between Petroff Amshen and the Defendants regarding more than $75,000.00 in past and future tax consequences as well as harm to its reputation as a result of the past and future conduct of the Defendants in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

134.    The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

135.    Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibits B through PP to this Complaint as Exhibits; any W-9 or 1099 form that reflects that the Defendants received services from Petroff Amshen are null and void, including, but not limited to, the W-9 form that is attached as Exhibit A to this Complaint; and the Defendants are precluded from engaging in any such acts in the future.

**SECOND CAUSE OF ACTION**
**Against Cheng, Yau, Samantha Trust and Tan**
**(Violation of 18 U.S.C. § 1962(c))**

136.     Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

137.     Alfa Rehab is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

138.     Cheng, Yau, Samantha Trust and Tan knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Alfa Rehab through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

139.     Furthermore, Cheng, Yau, Samantha Trust and Tan knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Alfa Rehab through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

140.     Upon information and belief, the property that Cheng, Yau, Samantha Trust and Tan transferred and divided amongst themselves, were proceeds of illegal activity.

141.     Upon information and belief, Cheng, Yau, Samantha Trust and Tan intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

142.     Upon information and belief, Cheng, Yau, Samantha Trust and Tan knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Cheng, Yau, Samantha Trust and Tan.

143.     Upon information and belief, Cheng, Yau, Samantha Trust and Tan knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

144.     Alfa Rehab is a New York entity that appears on multiple checks purportedly issued to Petroff Amshen, with various addresses that appear on the checks: 8844 24th Ave, Brooklyn, NY 11214 and 225 Bay 44th St, Brooklyn, NY 11214.

145.     Copies of 19 of the checks used in the scheme by Alfa Rehab are attached hereto as Exhibit B.

146.     As reflected therein, Alfa Rehab issued checks from a time period spanning from November 1, 2016 through November 2, 2018 totaling $69,157.00. Notably, the memo line of some of the earlier checks state "legal services." Petroff Amshen never provided legal services to Alfa Rehab.

147.     Upon information and belief, 8844 24th Ave, Brooklyn, NY 11214, the address that appears on many of the checks issued by Alfa Rehab, is the primary residence of Cheng as well as the official address of the "Samantha Trust."

148.     Upon information and belief, 225 Bay 44th St, Brooklyn, NY 11214, the address that appears on many of the checks issued by Alfa Rehab, is the primary residence of Chung Kwong Yau.

149.     Upon information and belief, 225 Bay 44th St, Brooklyn, NY 11214 the address that appears on many of the checks issued by Alfa Rehab, is the primary residence of Defendant Cai Feng Tan.

150.    None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

151.    Upon information and belief, Alfa Rehab's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Cheng, Yau, Samantha Trust and Tan operate Alfa Rehab, inasmuch as Alfa Rehab is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Alfa Rehab to function.

152.    Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Cheng, Yau, Samantha Trust and Tan, upon information and belief, continue to engage in the criminal activity described herein.

153.    These inherently unlawful acts are taken by Cheng, Yau, Samantha Trust and Tan in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

154.    Petroff Amshen has been injured as stated above.

**<u>THIRD CAUSE OF ACTION</u>**
**Against Cheng, Yau, Samantha Trust, Tan and Alfa Rehab**
**(Common Law Fraud)**

155.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

156.     Alfa Rehab, Cheng, Yau, Samantha Trust and Tan intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

157.     The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Alfa Rehab (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

158.     Cheng, Yau, Samantha Trust, Tan and Alfa Rehab intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

159.     Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

160.     Alfa Rehab and Cheng, Yau, Samantha Trust, and Tan's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

161.     Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## FOURTH CAUSE OF ACTION
### Against Cheng, Yau, Samantha Trust, Tan and Alfa Rehab
### (Unjust Enrichment)

162.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

163.    As set forth above, Cheng, Yau, Samantha Trust, Tan and Alfa Rehab have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

164.    Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Cheng, Yau, Samantha Trust, Tan and Alfa Rehab, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

165.    Cheng, Yau, Samantha Trust, Tan and Alfa Rehab have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Cheng, Yau, Samantha Trust, Tan and Alfa Rehab voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

166.    Cheng, Yau, Samantha Trust, Tan and Alfa Rehab's retention of sums violates fundamental principles of justice, equity and good conscience.

167.    By reason of the above, Cheng, Yau, Samantha Trust, Tan and Alfa Rehab have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

## FIFTH CAUSE OF ACTION
### Against Cheng, Yau, Samantha Trust, Tan and Alfa Rehab
### (Declaratory Judgment)

168.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

169.    There is an actual controversy between Petroff Amshen and Cheng, Yau, Samantha Trust and Tan regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Cheng, Yau, Samantha Trust and Tan in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

170.    The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

171.    Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 1201 | 11/1/2016 | $4,500 |
| 1208 | 11/16/2016 | $3,000 |
| 1222 | 12/1/2016 | $4,150 |
| 1243 | 1/3/2017 | $3,149 |
| 1328 | 2/1/2017 | $4,000 |
| 1341 | 3/3/2017 | $2,858 |
| 1352 | 4/1/2017 | $5,000 |
| 1372 | 5/1/2017 | $3,300 |
| 1536 | 7/8/2017 | $5,000 |
| 1558 | 8/4/2017 | $1,255 |
| 1576 | 9/7/2017 | $4,100 |
| 1597 | 10/3/2017 | $4,500 |
| 1620 | 11/7/2017 | $2,800 |
| 1647 | 1/2/2018 | $4,000 |
| 1419 | 2/4/2018 | $4,000 |
| 1434 | 3/4/2018 | $4,000 |
| 1441 | 4/4/2018 | $2,884 |
| 1514 | 5/3/2018 | $3,200 |
| 104 | 11/2/2018 | $3,461 |
| | | **$69,157** |
| | | |

172.    Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Cheng, Yau, Samantha Trust and Tan; never communicated with Cheng, Yau, Samantha Trust and Tan regarding payment of services, had no knowledge that Cheng, Yau, Samantha Trust and Tan were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit B; and Cheng, Yau, Samantha Trust and Tan are precluded from engaging in any such acts in the future.

## SIXTH CAUSE OF ACTION
### Against Belloni and Annarose Rotondi Trust
### (Violation of 18 U.S.C. § 1962(c))

173.    Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

174.    Advanced Rehab is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

175.    Belloni and Annarose Rotondi Trust knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Advanced Rehab through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

176.    Furthermore, Belloni and Annarose Rotondi Trust knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Advanced Rehab through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

177.     Upon information and belief, the property that Belloni and Annarose Rotondi Trust transferred and divided amongst themselves, were proceeds of illegal activity.

178.     Upon information and belief, Belloni and Annarose Rotondi Trust intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

179.     Upon information and belief, Belloni and Annarose Rotondi Trust knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Belloni and Annarose Rotondi Trust.

180.     Upon information and belief, Belloni and Annarose Rotondi Trust knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

181.     Advanced Rehab is a New York entity that appears on multiple checks purportedly issued to Petroff Amshen, with the addresses that appears on the checks being 1931 60th Street, 2nd Floor, Brooklyn, New York 11204.

182.      A copy of a check used in the scheme by Advanced Rehab is attached hereto as Exhibit C.

183.     Upon information and belief, 1931 60th Street, 2nd Floor, Brooklyn, New York 11204, the address that appears on the checks issued by Advanced Rehab, is the primary residence of Belloni.

184.     Upon information and belief, 1931 60th Street, 2nd Floor, Brooklyn, New York 11204 the address that appears on many of the checks issued by Advanced Rehab, is the address of Defendant the Annarose Rotondi Trust.

185. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

186. Upon information and belief, Advanced Rehab's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Belloni and Annarose Rotondi Trust operate Advanced Rehab, inasmuch as Advanced Rehab is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Advanced Rehab to function.

187. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Belloni and Annarose Rotondi Trust, upon information and belief, continue to engage in the criminal activity described herein.

188. These inherently unlawful acts are taken by Belloni and Annarose Rotondi Trust in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

189. Petroff Amshen has been injured as stated above.

## SEVENTH CAUSE OF ACTION
### Against Belloni, Annarose Rotondi Trust and Advance Rehab
### (Common Law Fraud)

190. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

191. Advanced Rehab, Belloni and Annarose Rotondi Trust intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

192. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Advanced Rehab (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

193. Belloni, Annarose Rotondi Trust and Advanced Rehab intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

194. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

195. Advanced Rehab, Belloni and Annarose Rotondi Trust's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

196. Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages

## EIGHTH CAUSE OF ACTION
### Against Belloni, Annarose Rotondi Trust and Advance Rehab
### (Unjust Enrichment)

197. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

198. As set forth above, Belloni, Annarose Rotondi Trust and Advanced Rehab have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

199. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Tan Belloni, Annarose Rotondi Trust and Advanced Rehab, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

200. Belloni, Annarose Rotondi Trust and Advanced Rehab have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Belloni, Annarose, Rotondi Trust and Advanced Rehab voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

201. Belloni, Annarose Rotondi Trust and Advanced Rehab's retention of sums violates fundamental principles of justice, equity and good conscience.

202. By reason of the above, Belloni, Annarose Rotondi Trust and Advanced Rehab have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

## NINTH CAUSE OF ACTION
### Against Belloni, Annarose Rotondi Trust and Advance Rehab
### (Declaratory Judgment)

203. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

204.     There is an actual controversy between Petroff Amshen and Belloni, Annarose Rotondi Trust and Advance Rehab regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Belloni, Annarose Rotondi Trust and Advance Rehab in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

205.     The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

206.     Examples of a past that is subject to the relief sought herein, include, but not limited to a check from JP Morgan Chase:

| CHECK# | DATES | AMOUNT |
|--------|-------|--------|
|        |       |        |
| 15     | 6/4/2018 | $6,404 |
|        |       |        |

207.     Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Belloni, Annarose Rotondi Trust and Advance Rehab; never communicated with Belloni, Annarose Rotondi Trust and Advance Rehab regarding payment of services, had no knowledge that Belloni, Annarose Rotondi Trust and Advance Rehab were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit C, and Belloni, Annarose Rotondi Trust and Advance Rehab are precluded from engaging in any such acts in the future.

## TENTH CAUSE OF ACTION
### Against Defendant Wei
### (Violation of 18 U.S.C. § 1962(c))

208.     Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

209.     Agyal Physical is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

210.     Wei knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Agyal Physical through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

211.     Furthermore, Wei knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Agyal Physical through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

212.     Upon information and belief, the property that Wei transferred and divided were proceeds of illegal activity.

213.     Upon information and belief, Wei intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

214.     Upon information and belief, Wei knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Wei.

215.     Upon information and belief, Wei knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

216.     Agyal Physical is a New York entity that appears on multiple checks purportedly issued to Petroff Amshen, with an address at 223 Bay 44th St, Apt 1, Brooklyn, NY 11214.

217.     A copy of a check used in the scheme by Agyal Physical is attached hereto as Exhibit D.

218.     As reflected therein, Agyal Physical issued a check on May 31, 2017 totaling $4,423.00. Notably, the memo line of  that check states "legal services." Petroff Amshen never provided legal services to Agyal Physical.

219.     Upon information and belief, 8844 24th Ave, Brooklyn, NY 11214, the address that appears on many of the checks issued by Agyal Physical, is the primary residence of Wei.

220.     None of the various signatures on the check that purport to be signature and endorsement of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

221.     Upon information and belief, Agyal Physical's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Wei operate Agyal Physical, inasmuch as Agyal Physical is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Agyal Physical to function.

222.     Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of

continued criminal activity, as does the fact that Wei, upon information and belief, continues to engage in the criminal activity described herein.

223.    These inherently unlawful acts are taken by Wei in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

224.    Petroff Amshen has been injured as stated above.

**ELEVENTH CAUSE OF ACTION**
**Against Wei and Agya Physical**
**(Common Law Fraud)**

225.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

226.    Agya Physical and Wei intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

227.    The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Agya Physical (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

228.    Agya Physical and Wei intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

229.    Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

230.    Agya Physical and Wei's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

231.    Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages.

## TWELFTH CAUSE OF ACTION
### Against Wei and Agya Physical
### (Unjust Enrichment)

232.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

233.    As set forth above, Wei and Agya Physical have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

234.    Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Wei and Agya Physical, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

235.    Wei and Agya Physical have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Wei and Agya Physical voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

236.    Wei and Agya Physical's retention of sums violates fundamental principles of justice, equity and good conscience.

237.    By reason of the above, Wei and Agya Physical have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

## THIRTEENTH CAUSE OF ACTION
### Against Wei and Agya Physical
### (Declaratory Judgment)

238.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

239.    There is an actual controversy between Petroff Amshen and Wei and Agya Physical regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Wei and Agya Physical in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

240.    The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

241.    Examples of a past check that is subject to the relief sought herein, include, but not limited to a check from Citibank:

| CHECK # | DATES | AMOUNT |
|---------|-------|--------|
|         |       |        |
| 766     | 5/31/2017 | $4,423 |
|         |       |        |

242.    Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Wei and Agya Physical; never communicated with Wei and Agya Physical regarding payment of services, had no knowledge that Wei and Agya Physical were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the check that copy of which is attached as Exhibit D, and Wei and Agya Physical are precluded from engaging in any such acts in the future.

## FOURTEENTH CAUSE OF ACTION
### Against Yu and Tang
### (Violation of 18 U.S.C. § 1962(c))

243.    Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

244.    Assem Physical is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

245.    Yu and Tang knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Assem Physical through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

246.    Furthermore, Yu and Tang Cheng, knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Assem Physical through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

247.    Upon information and belief, the property that Yu and Tang transferred and divided amongst themselves, were proceeds of illegal activity.

248.    Upon information and belief, Yu and Tang intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

249.    Upon information and belief, Yu and Tang knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Yu and Tang.

250.   Upon information and belief, Yu and Tang, knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

251.   Assem Physical is a New York entity that appears on multiple checks purportedly issued to Petroff Amshen, with an address that appears on the checks being 327 99th Street, 2nd Fl, Brooklyn, NY 11209.

252.   Copies of the checks used in the scheme by Assem Physical are attached hereto as Exhibit E.

253.   As reflected therein, Assem Physical issued checks from a time period spanning from April 2, 2017 through April 5, 2017 totaling $12,969.00. Notably, the memo line of one of the checks state "legal services." Petroff Amshen never provided legal services to Assem Physical.

254.   Upon information and belief, 327 99th Street, 2nd Fl, Brooklyn, NY 11209, the address that appears on many of the checks issued by Assem Physical, is the primary residence of Yu.

255.   Upon information and belief, 327 99th Street, 2nd Fl, Brooklyn, NY 11209, the address that appears on many of the checks issued by Assem Physical, is the primary residence of Tang.

256.   None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

257.   Upon information and belief, Assem Physical's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money

instruments are the regular way in which Yu and Tang operate Assem Physical, inasmuch as Assem Physical is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Assem Physical to function.

258.    Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Yu and Tang, upon information and belief, continue to engage in the criminal activity described herein.

259.    These inherently unlawful acts are taken by Yu and Tang in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

260.    Petroff Amshen has been injured as stated above.

### FIFTEENTH CAUSE OF ACTION
**Against Yu, Tang and Assem Physical**
**(Common Law Fraud)**

261.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

262.    Assem Physical, Yu and Tang intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

263.    The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Assem Physical (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement

of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

264.    Assem Physical, Yu and Tang intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

265.    Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

266.    Assem Physical, Yu and Tang's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

267.    Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## SIXTEENTH CAUSE OF ACTION
### Against Yu, Tang and Assem Physical
### (Unjust Enrichment)

268.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

269.    As set forth above, Yu, Tang and Assem Physical have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

270.    Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Yu, Tang and Assem Physical as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

271.    Yu, Tang and Assem Physical have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Yu, Tang and Assem Physical voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

272.    Yu, Tang and Assem Physical 's retention of sums violates fundamental principles of justice, equity and good conscience.

273.    By reason of the above, Yu, Tang and Assem Physical have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

**SEVENTEENTH CAUSE OF ACTION**
**Against Yu, Tang and Assem Physical**
**(Declaratory Judgment)**

274.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

275.    There is an actual controversy between Petroff Amshen and Yu, Tang and Assem Physical regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Yu, Tang and Assem Physical in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

276.    The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

277.    Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from TD Bank:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 1003 | 4/2/2017 | $5,400 |
| 1015 | 4/5/2017 | $7,569 |
| | | |
| | | **$12,969** |
| | | |

278.     Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Yu, Tang and Assem Physical; never communicated with Yu, Tang and Assem Physical regarding payment of services, had no knowledge that Yu, Tang and Assem Physical were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit E and Yu, Tang and Assem Physical are precluded from engaging in any such acts in the future.

<u>EIGHTEENTH CAUSE OF ACTION</u>
**Against Defendants Barakat and Fernandez**
**(Violation of 18 U.S.C. § 1962(c))**

279.     Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

280.     Barakat PC is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

281.     Barakat and Fernandez knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Barakat PC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

282.    Furthermore, Barakat and Fernandez knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Barakat PC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

283.    Upon information and belief, the property that Barakat and Fernandez transferred and divided amongst themselves, were proceeds of illegal activity.

284.    Upon information and belief, Barakat and Fernandez intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

285.    Upon information and belief, Barakat and Fernandez knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Barakat and Fernandez.

286.    Upon information and belief, Barakat and Fernandez knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

287.    Barakat PC is a New York entity that appears on multiple checks purportedly issued to Petroff Amshen, with its address from DOS is 3702 Shore Pkwy, Apt 1, Brooklyn, NY 11235.

288.    Barakat PC is owned by Amro Mahmoud Shokry Barakat, who upon information and belief is an individual who is a citizen of the State of New and resides at 717 Southern Blvd, Bronx, New York 10455.

289.    Copy of a check used in the scheme by Barakat PC is attached hereto as Exhibit F.

290.     As reflected therein, Barakat PC issued a check on June 19, 2017 totaling $4,663.00. Notably, the memo line of the check states "legal services." Petroff Amshen never provided legal services to Barakat PC.

291.     Upon information and belief, 3702 Shore Pkwy, Apt 1, Brooklyn, NY 11235 the address of Barakat PC, is the primary residence of Fernandez.

292.     None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

293.     Upon information and belief, Barakat PC's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Barakat and Fernandez operate Barakat PC, inasmuch as Barakat PC is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Barakat PC to function.

294.     Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Barakat and Fernandez, upon information and belief, continue to engage in the criminal activity described herein.

295.     These inherently unlawful acts are taken by Barakat and Fernandez in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

296.    Petroff Amshen has been injured as stated above.

## NINETEENTH CAUSE OF ACTION
### Against Barakat, Fernandez and Barakat PC
### (Common Law Fraud)

297.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

298.    Barakat, Fernandez and Barakat PC intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

299.    The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Barakat PC (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

300.    Barakat, Fernandez and Barakat PC intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

301.    Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

302.    Barakat, Fernandez and Barakat PC's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

303.     Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## TWENTIETH CAUSE OF ACTION
### Against Barakat, Fernandez and Barakat PC
### (Unjust Enrichment)

304.     Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

305.     As set forth above, Barakat, Fernandez and Barakat PC have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

306.     Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Barakat, Fernandez and Barakat PC, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

307.     Barakat, Fernandez and Barakat PC have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Barakat, Fernandez and Barakat PC voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

308.     Barakat, Fernandez and Barakat PC's retention of sums violates fundamental principles of justice, equity and good conscience.

309.     By reason of the above, Barakat, Fernandez and Barakat PC have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

**TWENTY-FIRST CAUSE OF ACTION**
**Against Barakat, Fernandez and Barakat PC**
**(Declaratory Judgment)**

310.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

311.    There is an actual controversy between Petroff Amshen and Barakat, Fernandez and Barakat PC regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Barakat, Fernandez and Barakat PC in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

312.    The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

313.    Examples of a past check that is subject to the relief sought herein, include, but not limited to a check from TD Bank:

| DATES | AMOUNT |
|-------|--------|
|       |        |
| 6/19/2017 | $4,663 |
|       |        |

314.    Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Barakat, Fernandez and Barakat PC; never communicated with Barakat, Fernandez and Barakat PC regarding payment of services, had no knowledge that Barakat, Fernandez and Barakat PC were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit F, and Barakat, Fernandez and Barakat PC are precluded from engaging in any such acts in the future.

## TWENTY-SECOND CAUSE OF ACTION
### Against Kanduri and Abouhassan
### (Violation of 18 U.S.C. § 1962(c))

315.    Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

316.    Wisdom is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

317.    Kanduri and Abouhassan knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Wisdom through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

318.    Furthermore, Kanduri and Abouhassan knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Wisdom through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

319.    Upon information and belief, the property that Kanduri and Abouhassan transferred and divided amongst themselves, were proceeds of illegal activity.

320.    Upon information and belief, Kanduri and Abouhassan intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

321.    Upon information and belief, Kanduri and Abouhassan knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Kanduri and Abouhassan.

322.    Upon information and belief, Kanduri and Abouhassan knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

323.    Wisdom is a New York entity that appears on multiple checks purportedly issued to Petroff Amshen, with its address at 200 Bay 49th St, Suite 3, Brooklyn, NY 11214.

324.    Copies of some of the checks used in the scheme by Wisdom are attached hereto as Exhibit G.

325.    As reflected therein, Wisdom issued checks from a time period spanning from November 3, 2016 through November 7, 2018 totaling $49,141. Notably, the memo line of most of the checks state "legal fee." Petroff Amshen never provided legal services to Wisdom. Also, the memo line of a check dated July 14, 2017 states "return check fee" in the amount of $4,300.00.

326.    Upon information and belief, 200 Bay 49th St, Suite 3, Brooklyn, NY 11214, the address of Wisdom is also a place in which Kanduri and Abouhassan conducts business.

327.    None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

328.    Upon information and belief, Wisdom's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Kanduri and Abouhassan operate Wisdom, inasmuch as Wisdom is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records

under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Wisdom to function.

329.     Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Kanduri and Abouhassan, upon information and belief, continue to engage in the criminal activity described herein.

330.     These inherently unlawful acts are taken by Kanduri and Abouhassan in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

331.     Petroff Amshen has been injured as stated above.

### TWENTY-THIRD CAUSE OF ACTION
**Against Kanduri, Abouhassan and Wisdom**
**(Common Law Fraud)**

332.     Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

333.     Kanduri, Abouhassan and Wisdom intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

334.     The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Wisdom (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

335.    Kanduri, Abouhassan and Wisdom intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

336.    Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

337.    Kanduri, Abouhassan and Wisdom's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

338.    Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## TWENTY-FOURTH CAUSE OF ACTION
### Against Kanduri, Abouhassan and Wisdom
### (Unjust Enrichment)

339.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

340.    As set forth above, Kanduri, Abouhassan and Wisdom have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

341.    Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Kanduri and Wisdom, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

342.    Kanduri, Abouhassan and Wisdom have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Kanduri, Abouhassan and Wisdom

voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

343.    Kanduri, Abouhassan and Wisdom's retention of sums violates fundamental principles of justice, equity and good conscience.

344.    By reason of the above, Kanduri, Abouhassan and Wisdom have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

## TWENTY-FIFTH CAUSE OF ACTION
### Against Kanduri, Abouhassan and Wisdom
### (Declaratory Judgment)

345.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

346.    There is an actual controversy between Petroff Amshen and Kanduri, Abouhassan and Wisdom regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Kanduri, Abouhassan and Wisdom in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

347.    The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

348.    Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from Bank of America:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 1308 | 11/3/2016 | $5,406 |
| 1394 | 7/7/2017 | $4,200 |
| 1398 | 7/14/2017 | $4,300 |
| 1432 | 9/2/2017 | $4,700 |
| 1454 | 9/23/2017 | $8,600 |
| 1458 | 10/11/2017 | $4,200 |
| 1498 | 12/15/2017 | $4,285 |
| 1518 | 1/26/2018 | $4,600 |
| 1619 | 8/16/2018 | $4,850 |
| 1657 | 11/7/2018 | $4,000 |
| | | |
| | | **$49,141** |
| | | |

349.     Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Kanduri, Abouhassan and Wisdom; never communicated with Kanduri, Abouhassan and Wisdom regarding payment of services, had no knowledge that Kanduri, Abouhassan and Wisdom were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit G, and Kanduri, Abouhassan and Wisdom are precluded from engaging in any such acts in the future.

### TWENTY-SIXTH CAUSE OF ACTION
**Against Elmandouh**
**(Violation of 18 U.S.C. § 1962(c))**

350.     Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

351.     Radwa PC is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

352.     Elmandouh knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Radwa PC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

353.     Furthermore, Elmandouh knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Radwa PC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

354.     Upon information and belief, the property that Elmandouh transferred and divided, were proceeds of illegal activity.

355.     Upon information and belief, Elmandouh intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

356.     Upon information and belief, Elmandouh knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Elmandouh.

357.     Upon information and belief, Elmandouh knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

358.     Radwa PC is a New York entity that appears on multiple checks purportedly issued to Petroff Amshen, with its address at 230 Bay 22nd St, Brooklyn, NY 11214.

359.     Copies of some of the checks used in the scheme by Radwa PC are attached hereto as Exhibit H.

360.    As reflected therein, Radwa PC issued checks from a time period spanning from November 30, 2017 through June 4, 2018 totaling $25,352.00. Notably, the memo line of the checks state "legal fee" or "legal service" or "official legal service." Petroff Amshen never provided legal services to Radwa PC.

361.    Upon information and belief, the address of Radwa PC, 230 Bay 22nd St, Brooklyn, NY 11214 is also a place in which Elmandouh resides.

362.    None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

363.    Upon information and belief, Radwa PC's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Elmandouh operates Radwa PC, inasmuch as Radwa PC is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Radwa PC  to function.

364.    Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Elmandouh, upon information and belief, continue to engage in the criminal activity described herein.

365. These inherently unlawful acts are taken by Elmandouh in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

366. Petroff Amshen has been injured as stated above.

## TWENTY-SEVENTH CAUSE OF ACTION
### Against Elmandouh and Radwa PC
### (Common Law Fraud)

367. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

368. Elmandouh and Radwa PC intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

369. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Radwa PC (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

370. Elmandouh and Radwa PC intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

371. Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

372.     Elmandouh and Radwa PC's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

373.     Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**TWENTY-EIGHTH CAUSE OF ACTION**
**Against Elmandouh and Radwa PC**
**(Unjust Enrichment)**

374.     Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

375.     As set forth above, Elmandouh and Radwa PC have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

376.     Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Elmandouh and Radwa PC, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

377.     Elmandouh and Radwa PC have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Elmandouh and Radwa PC voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

378.     Elmandouh and Radwa PC's retention of sums violates fundamental principles of justice, equity and good conscience.

379.     By reason of the above, Elmandouh and Radwa PC have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

## TWENTY-NINTH CAUSE OF ACTION
### Against Elmandouh and Radwa PC
### (Declaratory Judgment)

380.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

381.    There is an actual controversy between Petroff Amshen and Elmandouh and Radwa PC regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Elmandouh and Radwa PC in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

382.    The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

383.    Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 1342 | 11/30/2017 | $4,350 |
| 1411 | 1/3/2018 | $8,502 |
| 1404 | 2/5/2018 | $8,500 |
| 1474 | 6/4/2018 | $4,000 |
| | | |
| | | $25,352 |
| | | |

384.    Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Elmandouh and Radwa PC; never communicated with Elmandouh and Radwa PC regarding payment of services, had no knowledge that Elmandouh and Radwa PC were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent

checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit H, and Elmandouh and Radwa PC are precluded from engaging in any such acts in the future.

## THIRTIETH CAUSE OF ACTION
### Against Granovsky
### (Violation of 18 U.S.C. § 1962(c))

385.    Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

386.    Ultimate is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

387.    Granovsky knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Ultimate through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

388.    Furthermore, Granovsky knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Ultimate through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

389.    Upon information and belief, the property that Granovsky transferred and divided, were proceeds of illegal activity.

390.    Upon information and belief, Granovsky intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

391.    Upon information and belief, Granovsky knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the

nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Granovsky.

392.    Upon information and belief, Granovsky knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

393.    Ultimate is a New York entity that appears on checks purportedly issued to Petroff Amshen, with its address at 601 Surf Avenue, #22D, Brooklyn, New York 11224.

394.    A copy of a check used in the scheme by Ultimate is attached hereto as Exhibit I.

395.    As reflected therein, Ultimate issued a check on July 15, 2017, totaling $3,225.00. Petroff Amshen never provided legal services to Ultimate.

396.    Upon information and belief, the address of Ultimate, 601 Surf Avenue, #22D, Brooklyn, New York 11224 is also a place in which Granovsky resides.

397.    None of the signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

398.    Upon information and belief, Ultimate's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Granovsky operates Ultimate, inasmuch as Ultimate is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Ultimate to function.

399.     Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Granovsky, upon information and belief, continue to engage in the criminal activity described herein.

400.     These inherently unlawful acts are taken by Granovsky in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

401.     Petroff Amshen has been injured as stated above.

### THIRTY-FIRST CAUSE OF ACTION
**Against Granovsky and Ultimate**
**(Common Law Fraud)**

402.     Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

403.     Granovsky and Ultimate intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

404.     The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Ultimate (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

405.     Granovsky and Ultimate intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

406.    Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

407.    Granovsky and Ultimate's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

408.    Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

<u>**THIRTY-SECOND CAUSE OF ACTION**</u>
**Against Granovsky and Ultimate**
**(Unjust Enrichment)**

409.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

410.    As set forth above, Granovsky and Ultimate have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

411.    Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Granovsky and Ultimate, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

412.    Granovsky and Ultimate have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Granovsky and Ultimate voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

413.    Granovsky and Ultimate's retention of sums violates fundamental principles of justice, equity and good conscience.

414.   By reason of the above, Granovsky and Ultimate have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

**THIRTY-THIRD CAUSE OF ACTION**
**Against Granovsky and Ultimate**
**(Declaratory Judgment)**

415.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

416.   There is an actual controversy between Petroff Amshen and Granovsky and Ultimate regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Granovsky and Ultimate in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

417.   The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

418.   An example of a past check that is subject to the relief sought herein, include, but not limited to a check from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
|  |  |  |
| 533 | 7/15/2017 | $3,225 |
|  |  |  |

419.   Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Granovsky and Ultimate; never communicated with Granovsky and Ultimate regarding payment of services, had no knowledge that Granovsky and Ultimate were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are

forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit I, and Granovsky and Ultimate are precluded from engaging in any such acts in the future.

**THIRTY-FOURTH CAUSE OF ACTION**
**Against Granovsky**
**(Violation of 18 U.S.C. § 1962(c))**

420.    Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

421.    Granovsky PC is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

422.    Granovsky knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Granovsky PC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

423.    Furthermore, Granovsky knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Granovsky PC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

424.    Upon information and belief, the property that Granovsky transferred and divided amongst themselves, were proceeds of illegal activity.

425.    Upon information and belief, Granovsky intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

426.    Upon information and belief, Granovsky knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the

nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Granovsky.

427.    Upon information and belief, Granovsky knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

428.    Granovsky PC is a New York entity that appears on multiple checks purportedly issued to Petroff Amshen, with an address that appears on the checks being 1684 E 18th St, Brooklyn, NY 11229.

429.    Copies of the checks used in the scheme by Granovsky PC are attached hereto as Exhibit J.

430.    As reflected therein, Granovsky PC issued checks from a time period spanning from July 5, 2017 through July 27, 2018 totaling $6,903.48.

431.    None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

432.    Upon information and belief, Granovsky PC's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Granovsky operate Granovsky PC, inasmuch as Granovsky PC is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Granovsky PC to function.

433.    Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Granovsky, upon information and belief, continue to engage in the criminal activity described herein.

434.    These inherently unlawful acts are taken by Granovsky in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

435.    Petroff Amshen has been injured as stated above.

### THIRTY-FIFTH CAUSE OF ACTION
**Against Granovsky and Granovsky PC**
**(Common Law Fraud)**

436.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

437.    Granovsky intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

438.    The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Granovsky PC (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

439.    Granovsky PC and Granovsky intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

440.    Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

441.    Granovsky PC and Granovsky's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

442.    Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## THIRTY-SIXTH CAUSE OF ACTION
### Against Granovsky and Granovsky PC
### (Unjust Enrichment)

443.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

444.    As set forth above, Granovsky and Granovsky PC have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

445.    Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Granovsky and Granovsky PC, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

446.    Granovsky and Granovsky PC have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Granovsky and Granovsky PC voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

447.    Granovsky and Granovsky PC's retention of sums violates fundamental principles of justice, equity and good conscience.

448.    By reason of the above, Granovsky and Granovsky PC have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

## THIRTY-SEVENTH CAUSE OF ACTION
### Against Granovsky and Granovsky PC
### (Declaratory Judgment)

449.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

450.    There is an actual controversy between Petroff Amshen and Granovsky PC and Granovsky regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Granovsky PC and Granovsky in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

451.    The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

452.    Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
|  |  |  |
| 1036 | 7/5/2017 | $3,052 |
| 1260 | 7/27/2018 | $3,851.48 |
|  |  |  |
|  |  | **$6,903.48** |
|  |  |  |
|  |  |  |

453.    Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Granovsky PC and Granovsky; never communicated with Granovsky PC and Granovsky regarding payment of services, had no knowledge that Granovsky PC and Granovsky

were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit J, and Granovsky PC and Granovsky are precluded from engaging in any such acts in the future.

## THIRTY-EIGHTH CAUSE OF ACTION
### Against Mazza
### (Violation of 18 U.S.C. § 1962(c))

454.    Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

455.    Third Avenue is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

456.    Mazza knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Third Avenue through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

457.    Furthermore, Mazza knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Third Avenue through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

458.    Upon information and belief, the property that Mazza transferred and divided, were proceeds of illegal activity.

459.    Upon information and belief, Mazza intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

460.     Upon information and belief, Mazza knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Mazza.

461.     Upon information and belief, Mazza knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

462.     Third Avenue is a New York entity that appears on checks purportedly issued to Petroff Amshen, with an address that appears on the check being 465 Elwood Road, East Northport, New York 11731.

463.     A copy of a check used in the scheme by Third Avenue is attached hereto as Exhibit K.

464.     As reflected therein, Third Avenue issued checks a check on June 5, 2018 totaling $3,635.00. Notably, the memo line of the check states "legal services." Petroff Amshen never provided legal services to Third Avenue.

465.     None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

466.     Upon information and belief, Third Avenue's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Mazza operate Third Avenue, inasmuch as Third Avenue is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations

of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Third Avenue to function.

467.    Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Mazza, upon information and belief, continue to engage in the criminal activity described herein.

468.    These inherently unlawful acts are taken by Mazza in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

469.    Petroff Amshen has been injured as stated above.

### THIRTY-NINTH CAUSE OF ACTION
**Against Mazza and Third Avenue**
**(Common Law Fraud)**

470.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

471.    Third Avenue and Mazza intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

472.    The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Third Avenue (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

473.    Mazza and Third Avenue intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

474.    Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

475.    Third Avenue and Mazza's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

476.    Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## FORTIETH CAUSE OF ACTION
### Against Mazza and Third Avenue
### (Unjust Enrichment)

477.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

478.    As set forth above, Mazza and Third Avenue have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

479.    Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Mazza and Third Avenue, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

480.    Mazza and Third Avenue have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Mazza and Third Avenue voluntarily accepted

and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

481.    Mazza and Third Avenue's retention of sums violates fundamental principles of justice, equity and good conscience.

482.    By reason of the above, Mazza and Third Avenue have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

**FORTY-FIRST CAUSE OF ACTION**
**Against Mazza and Third Avenue**
**(Declaratory Judgment)**

483.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

484.    There is an actual controversy between Petroff Amshen and Mazza and Third Avenue regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Mazza and Third Avenue in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

485.    The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

486.    Example of a past check that is the subject to the relief sought herein, include, but not limited to a check from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 3415 | 6/5/2018 | $3,635 |
| | | |
| | | |

487.    Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Mazza and Third Avenue; never communicated with Mazza and Third Avenue regarding payment of services, had no knowledge that Mazza and Third Avenue were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit K, and Mazza and Third Avenue are precluded from engaging in any such acts in the future.

### FORTY-SECOND CAUSE OF ACTION
**Against Madeline**
**(Violation of 18 U.S.C. § 1962(c))**

488.    Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

489.    Therakinematic is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

490.    Madeline knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Therakinematic through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

491.    Furthermore, Madeline knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Therakinematic through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

492.    Upon information and belief, the property that Madeline transferred and divided amongst themselves, were proceeds of illegal activity.

493.    Upon information and belief, Madeline intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

494.    Upon information and belief, Madeline knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Madeline.

495.    Upon information and belief, Madeline knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

496.    Copies of checks used in the scheme by Therakinematic is attached hereto as Exhibit L.

497.    As reflected therein, Therakinematic issued checks from May 4, 2018 through December 3, 2018 totaling $23,935.00. Notably, the memo line of some of the checks state "legal fee." Petroff Amshen never provided legal services to Therakinematic.

498.    None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

499.    Upon information and belief, Therakinematic's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Madeline operates Therakinematic, inasmuch as Therakinematic  is not engaged in any legitimate business, and acts of federal crimes such as mail

fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Therakinematic to function.

500.    Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Madeline, upon information and belief, continue to engage in the criminal activity described herein.

501.    These inherently unlawful acts are taken by Madeline in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

502.    Petroff Amshen has been injured as stated above.

**FORTY-THIRD CAUSE OF ACTION**
**Against Madeline and Therakinematic**
**(Common Law Fraud)**

503.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

504.    Therakinematic and Madeline intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

505.    The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Therakinematic (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image

that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

506.    Madeline and Therakinematic intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

507.    Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

508.    Therakinematic and Madeline's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

509.    Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**FORTY-FOURTH CAUSE OF ACTION**
**Against Madeline and Therakinematic**
**(Unjust Enrichment)**

510.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

511.    As set forth above, Madeline and Therakinematic have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

512.    Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Madeline and Therakinematic, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

513. Madeline and Therakinematic have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Madeline and Therakinematic voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

514. Madeline and Therakinematic's retention of sums violates fundamental principles of justice, equity and good conscience.

515. By reason of the above, Madeline and Therakinematic have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

### FORTY-FIFTH CAUSE OF ACTION
**Against Madeline and Therakinematic
(Declaratory Judgment)**

516. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

517. There is an actual controversy between Petroff Amshen and Madeline and Therakinematic regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Madeline and Therakinematic in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

518. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

519. Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from TD Bank and Capitol One:

| CHECK # | DATES | AMOUNT |
|---|---|---|
|  |  |  |
| 244 | 4/4/2018 | $3,885 |
| 253 | 5/2/2018 | $5,350 |
| 307 | 8/7/2018 | $5,200 |
| 146 | 11/8/2018 | $4,500 |
| 201 | 12/3/2018 | $5,000 |
|  |  |  |
|  |  | $23,935 |
|  |  |  |

520.    Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Madeline and Therakinematic; never communicated with Madeline and Therakinematic regarding payment of services, had no knowledge that Madeline and Therakinematic were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit L, and Madeline and Therakinematic are precluded from engaging in any such acts in the future.

### FORTY-SIXTH CAUSE OF ACTION
**Against Madeline**
**(Violation of 18 U.S.C. § 1962(c))**

521.    Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

522.    Physio is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

523.    Madeline knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Physio through a pattern of racketeering activity consisting of repeated

violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

524.    Furthermore, Madeline knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Physio through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

525.    Upon information and belief, the property that Madeline transferred and divided were proceeds of illegal activity.

526.    Upon information and belief, Madeline intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

527.    Upon information and belief, Madeline knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Madeline.

528.    Upon information and belief, Madeline knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

529.    Copy of a check used in the scheme by Physio is attached hereto as Exhibit M.

530.    As reflected therein, Physio issued a check to Petroff Amshen on June 9, 2017, totaling $2,500.00. Notably, the memo line of the check state "legal fee." Petroff Amshen never provided legal services to Physio.

531.    None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

532.     Upon information and belief, Physio's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Madeline operates Physio, inasmuch as Physio is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Physio to function.

533.     Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Madeline, upon information and belief, continue to engage in the criminal activity described herein.

534.     These inherently unlawful acts are taken by Madeline in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

535.     Petroff Amshen has been injured as stated above.

### FORTY-SEVENTH CAUSE OF ACTION
**Against Madeline and Physio**
**(Common Law Fraud)**

536.     Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

537.     Physio and Madeline intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

538.     The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Physio (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

539.     Madeline and Physio intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

540.     Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

541.      Physio and Madeline's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

542.     Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### FORTY-EIGHTH CAUSE OF ACTION
**Against Madeline and Physio**
**(Unjust Enrichment)**

543.     Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

544.     As set forth above, Madeline and Physio have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

545.   Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Madeline and Physio, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

546.   Madeline and Physio have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Madeline and Physio voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

547.   Madeline and Physio's retention of sums violates fundamental principles of justice, equity and good conscience.

548.   By reason of the above, Madeline and Physio have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

### FORTY-NINTH CAUSE OF ACTION
**Against Madeline and Physio**
**(Declaratory Judgment)**

549.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

550.   There is an actual controversy between Petroff Amshen and Madeline and Physio regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Madeline and Physio in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

551.   The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

552.    Example of a past check that is the subject to the relief sought herein, include, but not limited to a check from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 1279 | 6/9/2017 | $2,500 |
| | | |

553.    Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Madeline and Physio; never communicated with Madeline and Physio regarding payment of services, had no knowledge that Madeline and Physio were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit M, and Madeline and Physio are precluded from engaging in any such acts in the future.

**FIFTIETH CAUSE OF ACTION**
**Against Madeline**
**(Violation of 18 U.S.C. § 1962(c))**

554.    Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

555.    Rehab is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

556.    Madeline knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Rehab through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

557.    Furthermore, Madeline knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Rehab through a pattern of racketeering activity

consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

558.    Upon information and belief, the property that Madeline transferred and divided were proceeds of illegal activity.

559.    Upon information and belief, Madeline intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

560.    Upon information and belief, Madeline knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Madeline.

561.    Upon information and belief, Madeline knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

562.    Copies of checks used in the scheme by Rehab is attached hereto as Exhibit N.

563.    As reflected therein, Rehab issued checks to Petroff Amshen from July 3, 2018 through November 10, 2018 totaling $13,278.00. Notably, the memo line of the check state "legal fee." Petroff Amshen never provided legal services to Rehab.

564.    None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

565.    Upon information and belief, Rehab's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Madeline operates Rehab, inasmuch as Rehab is not

engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Rehab to function.

566. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Madeline, upon information and belief, continue to engage in the criminal activity described herein.

567. These inherently unlawful acts are taken by Madeline in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

568. Petroff Amshen has been injured as stated above.

**FIFTY-FIRST CAUSE OF ACTION**
**Against Madeline and Rehab**
**(Common Law Fraud)**

569. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

570. Rehab and Madeline intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

571. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Rehab (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff

Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

572.    Madeline and Rehab intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

573.    Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

574.    Rehab and Madeline's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

575.    Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**FIFTY-SECOND CAUSE OF ACTION**
**Against Madeline and Rehab**
**(Unjust Enrichment)**

576.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

577.    As set forth above, Madeline and Rehab have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

578.    Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Madeline and Rehab, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

579.    Madeline and Rehab have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Madeline and Rehab voluntarily accepted and

distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

580.    Madeline and Rehab's retention of sums violates fundamental principles of justice, equity and good conscience.

581.    By reason of the above, Madeline and Rehab have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of $600,000.00.

**FIFTY-THIRD CAUSE OF ACTION**
**Against Madeline and Rehab**
**(Declaratory Judgment)**

582.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

583.    There is an actual controversy between Petroff Amshen and Madeline and Rehab regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Madeline and Rehab in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

584.    The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

585.    Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from TD Bank:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 156 | 7/3/2018 | $4,500 |
| 130 | 9/2/2018 | $5,500 |
| 142 | 11/10/2018 | $3,278 |
| | | |
| | | $13,278 |
| | | |
| | | |
| | | |

586.    Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Madeline and Rehab; never communicated with Madeline and Rehab regarding payment of services, had no knowledge that Madeline and Rehab were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit N, and Madeline and Rehab are precluded from engaging in any such acts in the future.

### FIFTY-FOURTH CAUSE OF ACTION
**Against Sayed**
**(Violation of 18 U.S.C. § 1962(c))**

587.    Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

588.    Significant is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

589.    Sayed knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Significant through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

590.    Furthermore, Sayed knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Significant through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

591.    Upon information and belief, the property that Sayed transferred and divided amongst themselves, were proceeds of illegal activity.

592.    Upon information and belief, Sayed intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

593.    Upon information and belief, Sayed knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Sayed.

594.    Upon information and belief, Sayed knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

595.    Copies of checks used in the scheme by Significant is attached hereto as Exhibit O.

596.    As reflected therein, Significant issued checks to Petroff Amshen from June 1, 2018 through July 2, 2018 totaling $12,00.00. Notably, the memo line of the check state "legal fee." Petroff Amshen never provided legal services to Significant.

597.    None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

598.    Upon information and belief, Significant's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Sayed operates Significant, inasmuch as Significant is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New

York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Significant to function.

599.    Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Sayed, upon information and belief, continue to engage in the criminal activity described herein.

600.    These inherently unlawful acts are taken by Sayed in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

601.    Petroff Amshen has been injured as stated above.

## FIFTY-FIFTH CAUSE OF ACTION
### Against Sayed and Significant
### (Common Law Fraud)

602.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

603.    Significant and Sayed intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

604.    The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Significant (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

605.     Sayed and Significant intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

606.     Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

607.     Significant and Sayed's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

608.     Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### FIFTY-SIXTH CAUSE OF ACTION
**Against Sayed and Significant**
**(Unjust Enrichment)**

609.     Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

610.     As set forth above, Sayed and Significant have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

611.     Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Sayed and Significant, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

612.     Sayed and Significant have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Sayed and Significant voluntarily accepted

and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

## FIFTY-SEVENTH CAUSE OF ACTION
### Against Sayed and Significant
### (Declaratory Judgment)

613.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

614.    There is an actual controversy between Petroff Amshen and Sayed and Significant regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Sayed and Significant in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

615.    The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

616.    Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
|  |  |  |
| 1281 | 6/1/2018 | $6,750 |
| 1296 | 7/2/2018 | $5,250 |
|  |  |  |
|  |  | $12,000 |
|  |  |  |

617.    Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Sayed and Significant; never communicated with Sayed and Significant regarding payment of services, had no knowledge that Sayed and Significant were using its name to launder

money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are

forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit O

and Sayed and Significant are precluded from engaging in any such acts in the future.

**FIFTY-EIGHTH CAUSE OF ACTION**
**Against Cayetuna**
**(Violation of 18 U.S.C. § 1962(c))**

618.    Petroff Amshen incorporates, as though fully set forth herein, each and every

allegation set forth above.

619.    NBC is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages

in activities that affects interstate commerce.

620.    Cayetuna knowingly conducted and/or participated, directly or indirectly, in the

conduct of the affairs of NBC through a pattern of racketeering activity consisting of repeated

violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission

facilities in furtherance of their illegal scheme.

621.    Furthermore, Cayetuna knowingly conducted and/or participated, directly or

indirectly, in the conduct of the affairs of NBC through a pattern of racketeering activity consisting

of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

622.    Upon information and belief, the property that Cayetuna transferred and divided

were proceeds of illegal activity.

623.    Upon information and belief, Cayetuna intended to engage in conduct constituting

a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

624.    Upon information and belief, Cayetuna knew that the transactions and the money

were never intended for Petroff Amshen and were designed in whole to conceal or disguise the

nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Cayetuna.

625.     Upon information and belief, Cayetuna knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

626.     Copies of checks used in the scheme by NBC are attached hereto as Exhibit P.

627.     As reflected therein, NBC issued checks to Petroff Amshen from September 5, 2018 through December 3, 2018 totaling $11,92.00. Notably, the memo line of the check state "legal fee." Petroff Amshen never provided legal services to NBC.

628.     None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

629.     Upon information and belief, NBC's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Cayetuna operates NBC, inasmuch as NBC is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for NBC to function.

630.     Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of

continued criminal activity, as does the fact that Cayetuna, upon information and belief, continue to engage in the criminal activity described herein.

631.    These inherently unlawful acts are taken by Cayetuna in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

632.    Petroff Amshen has been injured as stated above.

## FIFTY-NINTH CAUSE OF ACTION
### Against Cayetuna and NBC
### (Common Law Fraud)

633.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

634.    NBC and Cayetuna intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

635.    The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the NBC (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

636.    Cayetuna and NBC intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

637.    Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

638.     NBC and Cayetuna's extensive fraudulent conduct demonstrate a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

639.     Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## SIXTIETH CAUSE OF ACTION
### Against Cayetuna and NBC
### (Unjust Enrichment)

640.     Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

641.     As set forth above, Cayetuna and NBC have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

642.     Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Cayetuna and NBC, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

643.     Cayetuna and NBC have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Cayetuna and NBC voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

## SIXTY-FIRST CAUSE OF ACTION
### Against Cayetuna and NBC
### (Declaratory Judgment)

644.     Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

645.     There is an actual controversy between Petroff Amshen and Cayetuna and NBC regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Cayetuna and NBC in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

646.     The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

647.     Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from Bank of America:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 130 | 9/5/2018 | $6,000 |
| 168 | 10/30/2018 | $5,925 |
| | | |
| | | $11,925 |
| | | |

648.     Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Cayetuna and NBC; never communicated with Cayetuna and NBC regarding payment of services, had no knowledge that Cayetuna and NBC were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit P and Cayetuna and NBC are precluded from engaging in any such acts in the future.

## SIXTY-SECOND CAUSE OF ACTION
### Against Bekhet
### (Violation of 18 U.S.C. § 1962(c))

649.     Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

650.     Lite is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

651.     Bekhet knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Lite through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

652.     Furthermore, Bekhet knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Lite through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

653.     Upon information and belief, the property that Bekhet transferred and divided were proceeds of illegal activity.

654.     Upon information and belief, Bekhet intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

655.     Upon information and belief, Bekhet knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Bekhet.

656.     Upon information and belief, Bekhet knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

657.     Copies of checks used in the scheme by Lite are attached hereto as Exhibit Q.

658.     As reflected therein, Lite issued checks to Petroff Amshen on August 7, 2018 and November 9, 2018 totaling $7,500.00. Notably, the memo line of the check state "legal fee." Petroff Amshen never provided legal services to Lite.

659. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

660. Upon information and belief, Lite's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Bekhet operates Lite, inasmuch as Lite is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Lite to function.

661. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Bekhet, upon information and belief, continue to engage in the criminal activity described herein.

662. These inherently unlawful acts are taken by Bekhet in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

663. Petroff Amshen has been injured as stated above.

### SIXTY-THIRD CAUSE OF ACTION
**Against Bekhet and Lite**
**(Common Law Fraud)**

664. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

665.    Lite and Bekhet intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

666.    The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Lite (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

667.    Bekhet and Lite intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

668.    Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

669.    Lite and Bekhet's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

670.    Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## SIXTY-FOURTH CAUSE OF ACTION
### Against Bekhet and Lite
### (Unjust Enrichment)

671.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

672.     As set forth above, Bekhet and Lite have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

673.     Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Bekhet and Lite, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

674.     Bekhet and Lite have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Bekhet and Lite voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

### SIXTY-FIFTH CAUSE OF ACTION
**Against Bekhet and Lite**
**(Declaratory Judgment)**

675.     Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

676.     There is an actual controversy between Petroff Amshen and Bekhet and Lite regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Bekhet and Lite in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

677.     The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

678.     Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---------|-------|--------|
|         |       |        |
| 1659    | 8/7/2018 | $4,000 |
| 2008    | 11/9/2018 | $3,500 |
|         |       |        |
|         |       | **$7,500** |
|         |       |        |

679.     Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Bekhet and Lite; never communicated with Bekhet and Lite regarding payment of services, had no knowledge that Bekhet and Lite were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit Q, and Bekhet and Lite are precluded from engaging in any such acts in the future.

**SIXTY-SIXTH CAUSE OF ACTION**
**Against Sayed**
**(Violation of 18 U.S.C. § 1962(c))**

680.     Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

681.      Extensive is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

682.     Sayed knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Extensive through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

683.     Furthermore, Sayed knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Extensive through a pattern of racketeering activity

consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

684.    Upon information and belief, the property that Sayed transferred and divided, were proceeds of illegal activity.

685.    Upon information and belief, Sayed intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

686.    Upon information and belief, Sayed knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Sayed.

687.    Upon information and belief, Sayed knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

688.    A copy of a check used in the scheme by Extensive is attached hereto as Exhibit R.

689.    As reflected therein, Extensive issued a check to Petroff Amshen on May 31, 2018 totaling $4,500.00.

690.    None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

691.    Upon information and belief, Extensive's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Sayed operates Extensive, inasmuch as Extensive is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud,

laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Extensive to function.

692.     Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Sayed, upon information and belief, continue to engage in the criminal activity described herein.

693.     These inherently unlawful acts are taken by Sayed in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

694.     Petroff Amshen has been injured as stated above.

**SIXTY-SEVENTH CAUSE OF ACTION**
**Against Sayed and Extensive**
**(Common Law Fraud)**

695.     Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

696.     Extensive and Sayed intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

697.     The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Extensive (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that

Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

698.    Sayed and Extensive intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

699.    Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

700.    Extensive and Sayed's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

701.    Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**SIXTY-EIGHTH CAUSE OF ACTION**
**Against Sayed and Extensive**
**(Unjust Enrichment)**

702.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

703.    As set forth above, Sayed and Extensive have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

704.    Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Sayed and Extensive, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

705.    Sayed and Extensive have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Sayed and Extensive voluntarily accepted

and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

### SIXTY-NINTH CAUSE OF ACTION
**Against Sayed and Extensive**
**(Declaratory Judgment)**

706.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

707.    There is an actual controversy between Petroff Amshen and Sayed and Extensive regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Sayed and Extensive in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

708.    The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

709.    Example of a past checks that are subject to the relief sought herein, include, but not limited to a check from Bank of America:

| CHECK # | DATES | AMOUNT |
|---|---|---|
|  |  |  |
| 1558 | 5/31/2018 | $4,500 |
|  |  |  |

710.    Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Sayed and Extensive; never communicated with Sayed and Extensive regarding payment of services, had no knowledge that Sayed and Extensive were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are

forgeries, including, but not limited to, the check that copies of which is attached as Exhibit R, Sayed and Extensive are precluded from engaging in any such acts in the future.

## SEVENTIETH CAUSE OF ACTION
### Against Meyerzon
### (Violation of 18 U.S.C. § 1962(c))

711.   Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

712.   Danimark is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

713.   Meyerzon knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Danimark through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

714.   Furthermore, Meyerzon knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Danimark through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

715.   Upon information and belief, the property that Meyerzon transferred and divided were proceeds of illegal activity.

716.   Upon information and belief, Meyerzon intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

717.   Upon information and belief, Meyerzon knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the

nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Meyerzon.

718.     Upon information and belief, Meyerzon knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

719.     Copies of checks used in the scheme by Danimark is attached hereto as Exhibit S.

720.     As reflected therein, Danimark issued a check to Petroff Amshen on July 25, 2018 and November 2, 2018 totaling $11,000.00.

721.     None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

722.     Upon information and belief, Danimark's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Meyerzon operates Danimark, inasmuch as Danimark is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Danimark to function.

723.     Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Meyerzon, upon information and belief, continue to engage in the criminal activity described herein.

724.    These inherently unlawful acts are taken by Meyerzon in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

725.    Petroff Amshen has been injured as stated above.

### SEVENTY-FIRST CAUSE OF ACTION
### Against Meyerzon and Danimark
### (Common Law Fraud)

726.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

727.    Danimark and Meyerzon intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

728.    The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Danimark (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

729.    Meyerzon and Danimark intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

730.    Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

731.    Danimark and Meyerzon's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

732.    Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## SEVENTY-SECOND CAUSE OF ACTION
### Against Meyerzon and Danimark
### (Unjust Enrichment)

733.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

734.    As set forth above, Meyerzon and Danimark have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

735.    Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Meyerzon and Danimark, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

736.    Meyerzon and Danimark have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Meyerzon and Danimark voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

## SEVENTY-THIRD CAUSE OF ACTION
### Against Meyerzon and Danimark
### (Declaratory Judgment)

737.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

738.    There is an actual controversy between Petroff Amshen and Meyerzon and Danimark regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Meyerzon and Danimark in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

739.    The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

740.    Example of a past checks that is subject to the relief sought herein, include, but not limited to checks from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 66 | 7/25/2018 | $7,600 |
| 119 | 11/2/2018 | $3,400 |
| | | |
| | | $11,000 |
| | | |

741.    Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Meyerzon and Danimark; never communicated with Meyerzon and Danimark regarding payment of services, had no knowledge that Meyerzon and Danimark were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit S, Meyerzon and Danimark are precluded from engaging in any such acts in the future.

## SEVENTY-FOURTH CAUSE OF ACTION
### Against Shamalov
### (Violation of 18 U.S.C. § 1962(c))

742.     Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

743.     DJ is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

744.      Shamalov knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of DJ through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

745.     Furthermore, Shamalov knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of DJ through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

746.     Upon information and belief, the property that Shamalov transferred and divided were proceeds of illegal activity.

747.     Upon information and belief, Shamalov intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

748.     Upon information and belief, Shamalov knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Shamalov.

749.     Upon information and belief, Shamalov knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

750.     Copies of checks used in the scheme by DJ are attached hereto as Exhibit T.

751.     As reflected therein, DJ issued a check to Petroff Amshen from December 14, 2017 through May 24, 2018 totaling $26,345.74.

752.     None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

753.     Upon information and belief, DJ's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Shamalov operates DJ, inasmuch as DJ is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for DJ to function.

754.     Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Shamalov, upon information and belief, continue to engage in the criminal activity described herein.

755.     These inherently unlawful acts are taken by Shamalov in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

756.     Petroff Amshen has been injured as stated above.

**SEVENTY-FIFTH CAUSE OF ACTION**
**Against Shamalov and DJ**
**(Common Law Fraud)**

757.     Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

758.     DJ and Shamalov intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

759.     The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the DJ (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

760.     Shamalov and DJ intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

761.     Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

762.      DJ and Shamalov's extensive fraudulent conduct demonstrate a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

763.     Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## SEVENTY-SIXTH CAUSE OF ACTION
**Against Shamalov and DJ**
**(Unjust Enrichment)**

764. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

765. As set forth above, Shamalov and DJ have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

766. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Shamalov and DJ, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

767. Shamalov and DJ have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Shamalov and DJ voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

## SEVENTY-SEVENTH CAUSE OF ACTION
**Against Shamalov and DJ**
**(Declaratory Judgment)**

768. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

769. There is an actual controversy between Petroff Amshen and Shamalov and DJ regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Shamalov and DJ in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

770. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

771.     Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from Wells Fargo:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 2356 | 10/14/2017 | $8,451 |
| 4609 | 5/21/2018 | $9,747.07 |
| 4564 | 5/24/2018 | $8,147.67 |
| | | |
| | | |

772.     Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Shamalov and DJ; never communicated with Shamalov and DJ regarding payment of services, had no knowledge that Shamalov and DJ were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit T, Shamalov and DJ are precluded from engaging in any such acts in the future.

### SEVENTY-EIGHTH CAUSE OF ACTION
**Against Shamalov**
**(Violation of 18 U.S.C. § 1962(c))**

773.     Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

774.     River is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

775.     Shamalov knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of River through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

776.    Furthermore, Shamalov knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of River through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

777.    Upon information and belief, the property that Shamalov transferred and divided amongst themselves, were proceeds of illegal activity.

778.    Upon information and belief, Shamalov intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

779.    Upon information and belief, Shamalov knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Shamalov.

780.    Upon information and belief, Shamalov knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

781.     A copy of a check used in the scheme by River is attached hereto as Exhibit U.

782.    As reflected therein, River issued a check to Petroff Amshen on April 20, 2018 totaling $6,824.24.

783.    None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

784.    Upon information and belief, River's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Shamalov operates River, inasmuch as River is not engaged in any legitimate

business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for River to function.

785.    Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Shamalov, upon information and belief, continue to engage in the criminal activity described herein.

786.    These inherently unlawful acts are taken by Shamalov in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

787.    Petroff Amshen has been injured as stated above.

<strong><u>SEVENTY-NINTH CAUSE OF ACTION</u></strong><br><strong>Against Shamalov and River</strong><br><strong>(Common Law Fraud)</strong>

788.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

789.    River and Shamalov intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

790.    The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the River (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff

Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

791.    Shamalov and River intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

792.    Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

793.    River and Shamalov's extensive fraudulent conduct demonstrate a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

794.    Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## EIGHTIETH CAUSE OF ACTION
### Against Shamalov and River
### (Unjust Enrichment)

795.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

796.    As set forth above, Shamalov and River have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

797.    Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Shamalov and River, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

798.    Shamalov and River have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Shamalov and River voluntarily accepted and

distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

## EIGHTY-FIRST CAUSE OF ACTION
### Against Shamalov and River
### (Declaratory Judgment)

799.     Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

800.     There is an actual controversy between Petroff Amshen and Shamalov and River regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Shamalov and River in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

801.     The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

802.     Example of a past check that is subject to the relief sought herein, include, but not limited to a check from Wells Fargo:

| CHECK # | DATES | AMOUNT |
|---|---|---|
|  |  |  |
| 8118 | 4/20/2018 | $6,824.24 |
|  |  |  |

803.     Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Shamalov and River; never communicated with Shamalov and River regarding payment of services, had no knowledge that Shamalov and River were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are

forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit U, Shamalov and River are precluded from engaging in any such acts in the future.

## EIGHTY-SECOND CAUSE OF ACTION
### Against Magid
### (Violation of 18 U.S.C. § 1962(c))

804.    Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

805.    MMA is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

806.    Magid knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of MMA through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

807.    Furthermore, Magid knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of MMA through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

808.    Upon information and belief, the property that Magid transferred and divided, were proceeds of illegal activity.

809.    Upon information and belief, Magid intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

810.    Upon information and belief, Magid knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature,

the location, the source, the ownership, and the control of the proceeds of unlawful activity of Magid.

811.   Upon information and belief, Magid knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

812.    A copy of a check used in the scheme by MMA is attached hereto as Exhibit V.

813.   As reflected therein, MMA issued a check to Petroff Amshen on July 11, 2018 totaling $2,700.00.

814.   None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

815.   Upon information and belief, MMA's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Magid operates MMA, inasmuch as MMA is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for MMA to function.

816.   Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Magid, upon information and belief, continue to engage in the criminal activity described herein.

817.     These inherently unlawful acts are taken by Magid in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

818.     Petroff Amshen has been injured as stated above.

**EIGHTY-THIRD CAUSE OF ACTION**
**Against Magid and MMA**
**(Common Law Fraud)**

819.     Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

820.     MMA and Magid intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

821.     The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the MMA (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

822.      Magid and MMA intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

823.     Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

824.      MMA and Magid's extensive fraudulent conduct demonstrate a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

825.     Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## EIGHTY-FOURTH CAUSE OF ACTION
### Against Magid and MMA
### (Unjust Enrichment)

826.     Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

827.     As set forth above, Magid and MMA have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

828.     Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Magid and MMA, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

829.     Magid and MMA have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Magid and MMA voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

## EIGHTY-SEVENTH CAUSE OF ACTION
### Against Magid and MMA
### (Declaratory Judgment)

830.     Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

831.     There is an actual controversy between Petroff Amshen and Magid and MMA regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff

Amshen's reputation as a result of the past and future conduct of Magid and MMA in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

832.    The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

833.    Example of a past check that is subject to the relief sought herein, include, but not limited to a check from TD Bank:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 1052 | 7/11/2018 | $2,700 |
| | | |

834.    Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Magid and MMA; never communicated with Magid and MMA regarding payment of services, had no knowledge that Magid and MMA were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit V, Magid and MMA are precluded from engaging in any such acts in the future.

### EIGHTY-FIFTH CAUSE OF ACTION
**Against Singh and Kaur**
**(Violation of 18 U.S.C. § 1962(c))**

835.    Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

836.    JMP is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

837.    Singh and Kaur knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of JMP through a pattern of racketeering activity consisting of repeated

violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

838.    Furthermore, Singh and Kaur knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of JMP through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

839.    Upon information and belief, the property that Singh and Kaur transferred and divided amongst themselves, were proceeds of illegal activity.

840.    Upon information and belief, Singh and Kaur intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

841.    Upon information and belief, Singh and Kaur knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Singh and Kaur.

842.    Upon information and belief, Singh and Kaur knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

843.     A copy of a check used in the scheme by JMP is attached hereto as Exhibit W.

844.    As reflected therein, JMP issued a check to Petroff Amshen on December 30, 2018 totaling $4,120.00.

845.    None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

846.     Upon information and belief, JMP's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Singh and Kaur operate JMP, inasmuch as JMP is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for JMP to function.

847.     Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Singh and Kaur, upon information and belief, continue to engage in the criminal activity described herein.

848.     These inherently unlawful acts are taken by Singh and Kaur in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

849.     Petroff Amshen has been injured as stated above.

## EIGHTY-SIXTH CAUSE OF ACTION
### Against Singh, Kaur and JMP
### (Common Law Fraud)

850.     Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

851.     JMP and Singh and Kaur intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

852.     The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the JMP (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

853.     Singh and Kaur and JMP intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

854.     Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

855.     Singh, Kaur and JMP's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

856.     Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### EIGHTY-EIGHTH CAUSE OF ACTION
**Against Singh, Kaur and JMP**
**(Unjust Enrichment)**

857.     Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

858.     As set forth above, Sing, Kaur and JMP have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

859. Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Singh, Kaur and JMP, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

860. Singh, Kaur and JMP have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Singh, Kaur and JMP voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**EIGHTY-NINTH CAUSE OF ACTION**
**Against Singh, Kaur and JMP**
**(Declaratory Judgment)**

861. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

862. There is an actual controversy between Petroff Amshen and JMP and Singh and Kaur regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of JMP and Singh and Kaur in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

863. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

864. Example of a past check that is subject to the relief sought herein, include, but not limited to a check from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
|  |  |  |
| 582 | 10/30/2018 | $4,120 |
|  |  |  |

865.     Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to JMP and Singh and Kaur; never communicated with JMP and Singh and Kaur regarding payment of services, had no knowledge that JMP and Singh and Kaur were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit W, and Singh and Kaur are precluded from engaging in any such acts in the future.

### NINETIETH CAUSE OF ACTION
**Against Kessler**
**(Violation of 18 U.S.C. § 1962(c))**

866.     Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

867.     Hillside is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

868.      Kessler knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Hillside through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

869.     Furthermore, Kessler knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Hillside through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

870.     Upon information and belief, the property that Kessler transferred and divided were proceeds of illegal activity.

871.    Upon information and belief, Kessler intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

872.    Upon information and belief, Kessler knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Kessler.

873.    Upon information and belief, Kessler knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

874.    Copies of checks used in the scheme by Hillside is attached hereto as Exhibit X.

875.    As reflected therein, Hillside issued checks to Petroff Amshen on July 12, 2018 and December 17, 2018 totaling $7,214.00. The addresses on the checks as reflected therein, are 185 Marcy Avenue, Brooklyn, New York 11211 and 230 Broadway, Hillside, New Jersey 07642.

876.    None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

877.    Upon information and belief, Hillside's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Kessler operates Hillside, inasmuch as Hillside is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New

York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Hillside to function.

878.     Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Kessler, upon information and belief, continue to engage in the criminal activity described herein.

879.     These inherently unlawful acts are taken by Kessler in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

880.     Petroff Amshen has been injured as stated above.

**NINETY-FIRST CAUSE OF ACTION**
**Against Kessler and Hillside**
**(Common Law Fraud)**

881.     Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

882.     Hillside and Kessler intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

883.     The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Hillside (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

884.    Kessler and Hillside intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

885.    Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

886.    Hillside and Kessler's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

887.    Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**NINETY-SECOND CAUSE OF ACTION**
**Against Kessler and Hillside**
**(Unjust Enrichment)**

888.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

889.    As set forth above, Kessler and Hillside have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

890.    Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Kessler and Hillside, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

891.    Kessler and Hillside have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Kessler and Hillside voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

## NINETY-THIRD CAUSE OF ACTION
### Against Kessler and Hillside
### (Declaratory Judgment)

892.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

893.    There is an actual controversy between Petroff Amshen and Kessler and Hillside regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Kessler and Hillside in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

894.    The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

895.    Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from Capitol One:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 5524 | 7/12/2018 | $3,538.00 |
| 5548 | 12/17/2018 | $3,676.00 |
| | | |
| | | **$7,214** |
| | | |
| | | |

896.    Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Kessler and Hillside; never communicated with Kessler and Hillside regarding payment of services, had no knowledge that Kessler and Hillside were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including,

but not limited to, the checks that copies of which are attached as Exhibit X and Kessler and Hillside are precluded from engaging in any such acts in the future.

## NINETY-FOURTH CAUSE OF ACTION
### Against Abourya
### (Violation of 18 U.S.C. § 1962(c))

897.    Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

898.    First Hand is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

899.    Abourya knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of First Hand through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

900.    Furthermore, Abourya knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of First Hand through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

901.    Upon information and belief, the property that Abourya transferred and divided amongst themselves, were proceeds of illegal activity.

902.    Upon information and belief, Abourya intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

903.    Upon information and belief, Abourya knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the

nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Abourya.

904.   Upon information and belief, Abourya knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

905.    Copies of checks used in the scheme by First Hand, attached hereto as Exhibit Y.

906.   As reflected therein, First Hand issued checks to Petroff Amshen from April 4, 2017 through September 6, 2018 totaling $15,298.00. The addresses on the checks as reflected therein, are 2625 Atlantic Avenue, Brooklyn, New York 11207 and 35 Starlight Road, Staten Island, New York 10301.

907.   None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

908.   Upon information and belief, First Hand's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Abourya operates First Hand, inasmuch as First Hand is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for First Hand to function.

909.   Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of

continued criminal activity, as does the fact that Abourya, upon information and belief, continue to engage in the criminal activity described herein.

910.    These inherently unlawful acts are taken by Abourya in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

911.    Petroff Amshen has been injured as stated above.

**NINETY-FIFTH CAUSE OF ACTION**
**Against Abourya and First Hand**
**(Common Law Fraud)**

912.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

913.    First Hand and Abourya intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

914.    The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the First Hand (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

915.    Abourya and First Hand intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

916.    Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

917.    First Hand and Abourya's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

918.    Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## NINETY-SIXTH CAUSE OF ACTION
### Against Abourya and First Hand
### (Unjust Enrichment)

919.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

920.    As set forth above, Abourya and First Hand have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

921.    Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Abourya and First Hand, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

922.    Abourya and First Hand have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Abourya and First Hand voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

## NINETY-SEVENTH CAUSE OF ACTION
### Against Abourya and First Hand
### (Declaratory Judgment)

923.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

924.    There is an actual controversy between Petroff Amshen and Abourya and First Hand regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Abourya and First Hand in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

925.    The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

926.    Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 116 | 4/4/2017 | $4,735 |
| 368 | 7/14/2018 | $3,000 |
| 98 | 8/6/2018 | $4,000 |
| 2103 | 9/6/2018 | $3,563 |
| | | |
| | | $15,298 |
| | | |

927.    Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Abourya and First Hand; never communicated with Abourya and First Hand regarding payment of services, had no knowledge that Abourya and First Hand were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit Y and Abourya and First Hand are precluded from engaging in any such acts in the future.

**NINETY-EIGHTH CAUSE OF ACTION**
**Against Devan**
**(Violation of 18 U.S.C. § 1962(c))**

928.    Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

929.    Acupuncture is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

930.    Devan knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Acupuncture through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

931.    Furthermore, Devan knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Acupuncture through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

932.    Upon information and belief, the property that Devan transferred and divided amongst themselves, were proceeds of illegal activity.

933.    Upon information and belief, Devan intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

934.    Upon information and belief, Devan knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Devan.

935.    Upon information and belief, Devan knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

936.    Copies of checks used in the scheme by Acupuncture is attached hereto as Exhibit Z.

937.    As reflected therein, Acupuncture issued checks to Petroff Amshen from December 1, 2017 through July 18, 2018 totaling $7,976.94. The address on the checks as reflected therein is 1516 Dutch Broadway, Elmont, New York 11003.

938.    None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

939.    Upon information and belief, Acupuncture's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Devan operates Acupuncture, inasmuch as Acupuncture is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Acupuncture to function.

940.    Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Devan, upon information and belief, continue to engage in the criminal activity described herein.

941.    These inherently unlawful acts are taken by Devan in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

942.    Petroff Amshen has been injured as stated above.

### NINETY-NINTH CAUSE OF ACTION
**Against Devan and Acupuncture**
**(Common Law Fraud)**

943.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

944.    Acupuncture and Devan intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

945.    The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Acupuncture (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

946.    Devan and Acupuncture intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

947.    Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

948.    Acupuncture and Devan's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

949.    Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## ONE HUNDREDTH CAUSE OF ACTION
**Against Devan and Acupuncture**
**(Unjust Enrichment)**

950.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

951.    As set forth above, Devan and Acupuncture have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

952.    Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Devan and Acupuncture, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

953.    Devan and Acupuncture have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Devan and Acupuncture voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

## ONE HUNDRED AND FIRST CAUSE OF ACTION
**Against Devan and Acupuncture**
**(Declaratory Judgment)**

954.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

955.    There is an actual controversy between Petroff Amshen and Devan and Acupuncture regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Devan and Acupuncture in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

956.    The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

957.    Examples of past checks that are subject to the relief sought herein, include, but not limited to checks from Santander:

| CHECK # | DATES | AMOUNT |
|--------:|-------|-------:|
|  |  |  |
| 2032 | 7/14/2017 | $7,500 |
| 106 | 12/15/2017 | $6,800 |
| 144 | 2/22/2018 | $5,200 |
| 159 | 3/8/2018 | $7,500 |
| 193 | 4/11/2018 | $7,500 |
| 221 | 5/7/2018 | $7,300 |
|  |  |  |
|  |  | $48,600 |
|  |  |  |

958.    Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Devan and Acupuncture; never communicated with Devan and Acupuncture regarding payment of services, had no knowledge that Devan and Acupuncture were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit Z and Devan and Acupuncture are precluded from engaging in any such acts in the future.

## ONE HUNDRED AND SECOND CAUSE OF ACTION
### Against Nasr
### (Violation of 18 U.S.C. § 1962(c))

959.    Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

960.    Core is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

961.    Nasr knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Core through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

962.    Furthermore, Nasr knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Core through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

963.    Upon information and belief, the property that Nasr transferred and divided amongst themselves, were proceeds of illegal activity.

964.    Upon information and belief, Nasr intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

965.    Upon information and belief, Nasr knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Nasr.

966.    Upon information and belief, Nasr knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

967.    A copy of a check used in the scheme by Core is attached hereto as Exhibit AA.

968.    As reflected therein, Core issued a check to Petroff Amshen on August 7, 2018 totaling $7,976.94.

969.    None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

970.    Upon information and belief, Core's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Nasr operates Core, inasmuch as Core is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Core to function.

971.    Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Nasr, upon information and belief, continue to engage in the criminal activity described herein.

972.    These inherently unlawful acts are taken by Nasr in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

973.    Petroff Amshen has been injured as stated above.

## ONE HUNDRED AND THIRD CAUSE OF ACTION
### Against Nasr and Core
### (Common Law Fraud)

974.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

975.   Core and Nasr intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

976.   The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Core (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

977.   Nasr and Core intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

978.   Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

979.   Core and Nasr's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

980.   Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**ONE HUNDRED AND FOURTH CAUSE OF ACTION**
**Against Nasr and Core**
**(Unjust Enrichment)**

981.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

982.    As set forth above, Nasr and Core have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

983.    Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Nasr and Core, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

984.    Nasr and Core have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Nar and Core voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**ONE HUNDRED AND FIFTH CAUSE OF ACTION**
**Against Nasr and Core**
**(Declaratory Judgment)**

985.    Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

986.    There is an actual controversy between Petroff Amshen and Nasr and Core regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Nasr and Core in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

987.    The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

988.     Example of a past check that is the subject to the relief sought herein, include, but not limited to a check from Bank of America:

| CHECK # | DATES | AMOUNT |
|---|---|---|
|  |  |  |
| 1036 | 8/7/2018 | $7,032 |
|  |  |  |

989.     Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Nasr and Core; never communicated with Nasr and Core regarding payment of services, had no knowledge that Nasr and Core were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit AA, and Nasr and Core are precluded from engaging in any such acts in the future.

## ONE HUNDRED AND SIXTH CAUSE OF ACTION
### Against Ilyabayev
### (Violation of 18 U.S.C. § 1962(c))

990.     Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

991.     Wellness is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

992.      Ilyabayev knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Wellness through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

993.     Furthermore, Ilyabayev knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Wellness through a pattern of racketeering activity

consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

994. Upon information and belief, the property that Ilyabayev transferred and divided were proceeds of illegal activity.

995. Upon information and belief, Ilyabayev intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

996. Upon information and belief, Ilyabayev knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Ilyabayev.

997. Upon information and belief, Ilyabayev knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

998. A Copy of a checks used in the scheme by Wellness is attached hereto as Exhibit BB.

999. As reflected therein, Wellness issued checks to Petroff Amshen on September 25, 2017 and October 25, 2017 totaling $15,500.00.

1000. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1001. Upon information and belief, Wellness's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Ilyabayev operates Wellness, inasmuch as Wellness is

not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Wellness to function.

1002.   Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Ilyabayev, upon information and belief, continue to engage in the criminal activity described herein.

1003.   These inherently unlawful acts are taken by Ilyabayev in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1004.   Petroff Amshen has been injured as stated above.

**ONE HUNDRED AND SEVENTH CAUSE OF ACTION**
**Against Ilyabayev and Wellness**
**(Common Law Fraud)**

1005.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1006.   Wellness and Ilyabayev intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1007.   The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Wellness (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that

Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1008.   Ilyabayev and Wellness intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1009.   Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1010.   Wellness and Ilyabayev's extensive fraudulent conduct demonstrate a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1011.   Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

<u>**ONE HUNDRED AND EIGHTH CAUSE OF ACTION**</u>
**Against Ilyabayev and Wellness**
**(Unjust Enrichment)**

1012.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1013.   As set forth above, Ilyabayev and Wellness have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1014.   Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Ilyabayev and Wellness, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1015.   Ilyabayev and Wellness have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Ilyabayev and Wellness voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

### ONE HUNDRED AND NINENTH CAUSE OF ACTION
**Against Ilyabayev and Wellness**
**(Declaratory Judgment)**

1016.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1017.   There is an actual controversy between Petroff Amshen and Ilyabayev and Wellness regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Ilyabayev and Wellness in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1018.   The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1019.   Example of past checks that are the subject to the relief sought herein, include, but not limited to checks from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|--------:|-------|-------:|
|  |  |  |
| 304 | 9/25/2017 | $7,500 |
| 306 | 10/25/2017 | $8,500 |
|  |  |  |

1020.   Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Ilyabayev and Wellness; never communicated with Ilyabayev and Wellness regarding

payment of services, had no knowledge that Ilyabayev and Wellness were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit CC, Ilyabayev and Wellness are precluded from engaging in any such acts in the future.

**ONE HUNDRED AND TENTH CAUSE OF ACTION**
**Against Manuel**
**(Violation of 18 U.S.C. § 1962(c))**

1021.  Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1022.  Comfort is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1023.  Manuel knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Comfort through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1024.  Furthermore, Manuel knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Comfort through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1025.  Upon information and belief, the property that Manuel transferred and divided amongst themselves, were proceeds of illegal activity.

1026.  Upon information and belief, Manuel intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1027.   Upon information and belief, Manuel knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Ilyabayev.

1028.   Upon information and belief, Manuel knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1029.    A copy of a check used in the scheme by Comfort is attached hereto as Exhibit CC.

1030.   As reflected therein, Comfort issued a check to Petroff Amshen on July 2, 2018 totaling $1,650.00.

1031.   None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1032.   Upon information and belief, Comfort's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Manuel operates Comfort, inasmuch as Comfort is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Comfort to function.

1033.   Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of

continued criminal activity, as does the fact that Manuel, upon information and belief, continue to engage in the criminal activity described herein.

1034.   These inherently unlawful acts are taken by Manuel in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1035.   Petroff Amshen has been injured as stated above.

**ONE HUNDRED AND ELEVENTH CAUSE OF ACTION**
**Against Manuel and Comfort**
**(Common Law Fraud)**

1036.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1037.   Comfort and Manuel intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1038.   The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Comfort (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1039.    Manuel and Comfort intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1040.   Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1041.   Comfort and Manuel's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1042.   Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**ONE HUNDRED AND TWELFTH CAUSE OF ACTION**
**Against Manuel and Comfort**
**(Unjust Enrichment)**

1043.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1044.   As set forth above, Manuel and Comfort have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1045.   Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Manuel and Comfort, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1046.   Manuel and Comfort have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Manuel and Comfort voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**ONE HUNDRED AND THIRTEENTH CAUSE OF ACTION**
**Against Manuel and Comfort**
**(Declaratory Judgment)**

1047.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1048.   There is an actual controversy between Petroff Amshen and Manuel and Comfort regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Manuel and Comfort in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1049.   The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1050.   Example of a past check that is the subject to the relief sought herein, include, but not limited to a check from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 147 | 7/2/2018 | $1,650 |
| | | |
| | | |

1051.   Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Manuel and Comfort; never communicated with Manuel and Comfort regarding payment of services, had no knowledge that Manuel and Comfort were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit CC and Manuel and Comfort are precluded from engaging in any such acts in the future.

## ONE HUNDRED AND FOURTEENTH CAUSE OF ACTION
### Against Schies
### (Violation of 18 U.S.C. § 1962(c))

1052.   Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1053.   Canarsie Wellness is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1054.   Schies knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Canarsie Wellness through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1055.   Furthermore, Schies knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Canarsie Wellness through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1056.   Upon information and belief, the property that Schies transferred and divided were proceeds of illegal activity.

1057.   Upon information and belief, Schies intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1058.   Upon information and belief, Schies knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Schies.

1059.   Upon information and belief, Schies knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1060.   A copy of a check used in the scheme by Canarsie Wellness is attached hereto as Exhibit DD.

1061.  As reflected therein, Canarsie Wellness issued a check to Petroff Amshen on December 24, 2017 totaling $9,125.00.

1062.  None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1063.  Upon information and belief, Canarsie Wellness' business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Schies operates Canarsie Wellness, inasmuch as Canarsie Wellness is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Canarsie Wellness to function.

1064.  Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Schies, upon information and belief, continue to engage in the criminal activity described herein.

1065.  These inherently unlawful acts are taken by Schies in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1066.  Petroff Amshen has been injured as stated above.

## ONE HUNDRED AND FIFTEENTH CAUSE OF ACTION
### Against Schies and Canarsie Wellness
### (Common Law Fraud)

1067.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1068.   Canarsie Wellness and Schies intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1069.   The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Canarsie Wellness (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1070.   Schies and Canarsie Wellness intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1071.   Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1072.   Canarsie Wellness and Schies' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1073.   Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## ONE HUNDRED AND SIXTEENTH CAUSE OF ACTION
### Against Schies and Canarsie Wellness
### (Unjust Enrichment)

1074.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1075.   As set forth above, Schies and Canarsie Wellness have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1076.   Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Schies and Canarsie Wellness, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1077.   Schies and Canarsie Wellness have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Schies and Canarsie Wellness voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

## ONE HUNDRED AND SEVENTEENTH CAUSE OF ACTION
### Against Schies and Canarsie Wellness
### (Declaratory Judgment)

1078.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1079.   There is an actual controversy between Petroff Amshen and Schies and Canarsie Wellness regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Schies and Canarsie

Wellness in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1080. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1081. An example of a past check that is subject to the relief sought herein, include, but not limited to a check from JP Morgan Chase Bank:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 2000 | 12/24/2017 | $9,125 |
| | | |

1082. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Schies and Canarsie Wellness; never communicated with Schies and Canarsie Wellness regarding payment of services, had no knowledge that Schies and Canarsie Wellness were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit DD Schies and Canarsie Wellness are precluded from engaging in any such acts in the future.

**ONE HUNDRED AND EIGHTEENTH CAUSE OF ACTION**
**Against Podhayetska**
**(Violation of 18 U.S.C. § 1962(c))**

1083. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1084. BAC is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

- 166 -

1085. Podhayetska knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of BAC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1086. Furthermore, Podhayetska knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of BAC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1087. Upon information and belief, the property that Podhayetska transferred and divided amongst themselves, were proceeds of illegal activity.

1088. Upon information and belief, Podhayetska intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1089. Upon information and belief, Podhayetska knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Podhayetska.

1090. Upon information and belief, Podhayetska knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1091. Copies of the checks used in the scheme by BAC are attached hereto as Exhibit EE.

1092. As reflected therein, BAC issued checks to Petroff Amshen from August 29, 2018 through November 26, 2018 totaling $21,400.00.

1093. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1094. Upon information and belief, BAC's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Podhayetska operates BAC, inasmuch as BAC is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for BAC to function.

1095. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Podhayetska, upon information and belief, continue to engage in the criminal activity described herein.

1096. These inherently unlawful acts are taken by Podhayetska in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1097. Petroff Amshen has been injured as stated above.

## ONE HUNDRED AND NINETEENTH CAUSE OF ACTION
### Against Podhayetska and BAC
### (Common Law Fraud)

1098. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1099.   BAC and Podhayetska intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1100.   The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the BAC (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1101.   Podhayetska and BAC intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1102.   Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1103.   BAC and Podhayetska's extensive fraudulent conduct demonstrate a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1104.   Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## ONE HUNDRED AND TWENTIETH CAUSE OF ACTION
### Against Podhayetska and BAC
### (Unjust Enrichment)

1105.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1106.   As set forth above, Podhayetska and BAC have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1107.   Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Podhayetska and BAC, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1108.   Podhayetska and BAC have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Podhayetska and BAC voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

## ONE HUNDRED AND TWENTY-FIRST CAUSE OF ACTION
### Against Podhayetska and BAC
### (Declaratory Judgment)

1109.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1110.   There is an actual controversy between Petroff Amshen and Podhayetska and BAC regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Podhayetska and BAC in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1111. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1112. Example of past checks that are the subject to the relief sought herein, include, but not limited to checks from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 624 | 8/29/2018 | $8,000 |
| 676 | 10/30/2018 | $7,200 |
| 724 | 11/26/2018 | $6,200 |
| | | |
| | | $21,400 |
| | | |

1113. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Podhayetska and BAC; never communicated with Podhayetska and BAC regarding payment of services, had no knowledge that Podhayetska and BAC were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit EE, Podhayetska and BAC are precluded from engaging in any such acts in the future.

## ONE HUNDRED AND TWENTY-SECOND CAUSE OF ACTION
### Against Saidy
### (Violation of 18 U.S.C. § 1962(c))

1114. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1115. BSR is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1116. Saidy knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of BSR through a pattern of racketeering activity consisting of repeated

violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1117.   Furthermore, Saidy knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of BSR through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1118.   Upon information and belief, the property that Saidy transferred and divided amongst themselves, were proceeds of illegal activity.

1119.   Upon information and belief, Saidy intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1120.   Upon information and belief, Saidy knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Saidy.

1121.   Upon information and belief, Saidy knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1122.    Copies of the checks used in the scheme by BSR are attached hereto as Exhibit FF.

1123.   As reflected therein, BSR issued checks to Petroff Amshen on July 2, 2018 and November 2, 2018 totaling $14,438.00.

1124.   None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1125.   Upon information and belief, BSR's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering

money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Saidy operates BSR, inasmuch as BSR is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for BSR to function.

1126.   Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Saidy, upon information and belief, continue to engage in the criminal activity described herein.

1127.   These inherently unlawful acts are taken by Saidy in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1128.   Petroff Amshen has been injured as stated above.

## ONE HUNDRED AND TWENTY-THIRD CAUSE OF ACTION
### Against Saidy and BSR
### (Common Law Fraud)

1129.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1130.   BSR and Saidy intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1131.   The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the BSR (ii) claiming that Petroff Amshen received checks

as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1132.   Saidy and BSR intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1133.   Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1134.   BSR and Saidy's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1135.   Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## ONE HUNDRED AND TWENTY-FOURTH CAUSE OF ACTION
### Against Saidy and BSR
### (Unjust Enrichment)

1136.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1137.   As set forth above, Saidy and BSR have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1138.   Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Saidy and BSR, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1139. Saidy and BSR have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Saidy and BSR voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

### ONE HUNDRED AND TWENTY-FIFTH CAUSE OF ACTION
**Against Saidy and BSR**
**(Declaratory Judgment)**

1140. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1141. There is an actual controversy between Petroff Amshen and Saidy and BSR regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Saidy and BSR in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1142. The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1143. Example of past checks that are the subject to the relief sought herein, include, but not limited to checks from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---------|-------|--------|
|         |       |        |
| 123     | 8/2/2018 | $10,838 |
| 150     | 11/2/2018 | $3,600 |
|         |       |        |
|         |       | **$14,438** |
|         |       |        |

Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Saidy and BSR; never communicated with Saidy and BSR regarding payment of services, had no knowledge that Saidy and BSR were using its name to launder money; all signatures of Petroff

Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit FF, Saidy and BSR are precluded from engaging in any such acts in the future.

### ONE HUNDRED AND TWENTY-SIXTH CAUSE OF ACTION
### Against Bodchynska and Kurkarewicz
### (Violation of 18 U.S.C. § 1962(c))

1144.   Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1145.   BL is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1146.   Bodchynska and Kurkarewicz knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of BL through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1147.   Furthermore, Bodchynska and Kurkarewicz knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of BL through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1148.   Upon information and belief, the property that Bodchynska and Kurkarewicz transferred and divided amongst themselves, were proceeds of illegal activity.

1149.   Upon information and belief, Bodchynska and Kurkarewicz intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1150.   Upon information and belief, Bodchynska and Kurkarewicz knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole

to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Saidy.

1151.   Upon information and belief, Bodchynska and Kurkarewicz knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1152.   Copies of the checks used in the scheme by BL are attached hereto as Exhibit GG.

1153.   As reflected therein, BL issued checks to Petroff Amshen on February 27, 2017 and April 28, 2018 totaling $5,100.00.

1154.   None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1155.   Upon information and belief, BL's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Bodchynska and Kurkarewicz operate BL, inasmuch as BL is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for BL to function.

1156.   Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of

continued criminal activity, as does the fact that Bodchynska and Kurkarewicz, upon information and belief, continue to engage in the criminal activity described herein.

1157.  These inherently unlawful acts are taken by Bodchynska and Kurkarewicz in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1158.  Petroff Amshen has been injured as stated above.

## ONE HUNDRED AND TWENTY-SEVENTH CAUSE OF ACTION
### Against Bodchynska, Kurkarewicz and BL
### (Common Law Fraud)

1159.  Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1160.  BL, Bodchynska and Kurkarewicz intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1161.  The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the BL (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1162.  Bodchynska and Kurkarewicz and BL intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1163.  Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1164.   BL, Bodchynska and Kurkarewicz's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1165.   Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### ONE HUNDRED AND TWENTY-EIGHTH CAUSE OF ACTION
**Against Bodchynska, Kurkarewicz and BL**
**(Unjust Enrichment)**

1166.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1167.   As set forth above, Bodchynska, Kurkarewicz and BL have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1168.   Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of BL, Bodchynska and Kurkarewicz, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1169.   BL, Bodchynska and Kurkarewicz have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that BL, Bodchynska and Kurkarewicz voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

### ONE HUNDRED AND TWENTY-NINTH CAUSE OF ACTION
**Against Bodchynska, Kurkarewicz and BL**
**(Declaratory Judgment)**

1170.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1171.   There is an actual controversy between Petroff Amshen and BL, Bodchynska and Kurkarewicz regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of BL, Bodchynska and Kurkarewicz in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1172.   The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1173.   Example of past checks that are the subject to the relief sought herein, include, but not limited to checks from TD Bank:

| CHECK # | DATES | AMOUNT |
|---|---|---|
|  |  |  |
| 1222 | 2/27/2017 | $2,500 |
| 1542 | 4/28/2018 | $2,600 |
|  |  |  |
|  |  | $5,100 |
|  |  |  |

1174.   Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to BL, Bodchynska and Kurkarewicz; never communicated with BL, Bodchynska and Kurkarewicz regarding payment of services, had no knowledge that BL, Bodchynska and Kurkarewicz were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit GG, BL, Bodchynska and Kurkarewicz are precluded from engaging in any such acts in the future.

## ONE HUNDRED AND THIRTIETH CAUSE OF ACTION
### Against Daimond
### (Violation of 18 U.S.C. § 1962(c))

1175.   Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1176.   BCR is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1177.   Daimond knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of BCR through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1178.   Furthermore, Daimond knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of BCR through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1179.   Upon information and belief, the property that Daimond transferred and divided, were proceeds of illegal activity.

1180.   Upon information and belief, Daimond intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1181.   Upon information and belief, Daimond knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Daimond.

1182.   Upon information and belief, Daimond knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1183.   A copy of a check used in the scheme by BCR is attached hereto as Exhibit HH.

1184.   As reflected therein, BCR issued a check to Petroff Amshen on November 1, 2018 totaling $3,400.00.

1185.   None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1186.   Upon information and belief, BCR's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Daimond operates BCR, inasmuch as BCR is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for BCR to function.

1187.   Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Daimond, upon information and belief, continue to engage in the criminal activity described herein.

1188.   These inherently unlawful acts are taken by Daimond in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1189.   Petroff Amshen has been injured as stated above.

## ONE HUNDRED AND THIRTY-FIRST CAUSE OF ACTION
### Against Daimond and BCR
### (Common Law Fraud)

1190.  Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1191.  BCR and Daimond intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1192.  The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the BCR (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1193.   Daimond and BCR intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1194.  Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1195.   Daimond and BCR's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1196.   Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## ONE HUNDRETH AND THIRTY-SECOND CAUSE OF ACTION
### Against Daimond and BCR
### (Unjust Enrichment)

1197.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1198.   As set forth above, Daimond and BCR have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1199.   Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Daimond and BCR, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1200.   Daimond and BCR have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Daimond and BCR voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

## ONE HUNDRETH AND THIRTY-THIRD CAUSE OF ACTION
### Against Daimond and BCR
### (Declaratory Judgment)

1201.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1202.   There is an actual controversy between Petroff Amshen and Daimond and BCR regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Daimond and BCR in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1203.   The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1204.   Example of a past check that is the subject to the relief sought herein, include, but not limited to a check from TD Bank:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 620 | 11/1/2018 | $3,400 |
| | | |

1205.   Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Daimond and BCR; never communicated with Daimond and BCR regarding payment of services, had no knowledge that Daimond and BCR were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit HH, and Daimond and BCR are precluded from engaging in any such acts in the future.

## ONE HUNDRED AND THIRTY-FOURTH CAUSE OF ACTION
### Against Abourya
### (Violation of 18 U.S.C. § 1962(c))

1206.   Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1207.   BT is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1208.   Abourya knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of BT through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1209.  Furthermore, Abourya knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of BT through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1210.  Upon information and belief, the property that Abourya transferred and divided were proceeds of illegal activity.

1211.  Upon information and belief, Abourya intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1212.  Upon information and belief, Abourya knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Abourya.

1213.  Upon information and belief, Abourya knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1214.   Copies of checks used in the scheme by BT is attached hereto as Exhibit II.

1215.  As reflected therein, BT issued checks to Petroff Amshen from June 9, 2017 through September 5, 2018 totaling $23,239.00. The addresses on the checks as reflected therein, 35 Starlight Road, Staten Island, New York 10301.

1216.  As reflected therein, the memo lines of most of the check state "legal fee." Petroff Amshen did not provide legal services to BT.

1217.  None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1218.   Upon information and belief, BT's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Abourya operates BT, inasmuch as BT is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for BT to function.

1219.   Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Abourya, upon information and belief, continue to engage in the criminal activity described herein.

1220.   These inherently unlawful acts are taken by Abourya in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1221.   Petroff Amshen has been injured as stated above.

### ONE HUNDRED AND THIRTY-FIFTH CAUSE OF ACTION
**Against Abourya and BT**
**(Common Law Fraud)**

1222.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1223.   BT and Abourya intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1224.   The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the BT (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1225.   Abourya and BT intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1226.   Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1227.   BT and Abourya's extensive fraudulent conduct demonstrate a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1228.   Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### ONE HUNDRED AND THIRTY-SIXTH CAUSE OF ACTION
**Against Abourya and BT**
**(Unjust Enrichment)**

1229.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1230.   As set forth above, Abourya and BT have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1231.   Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Abourya and BT, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1232.   Abourya and BT have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Abourya and BT voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

### ONE HUNDRED AND THIRTY-SEVENTH CAUSE OF ACTION
#### Against Abourya and BT
#### (Declaratory Judgment)

1233.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1234.   There is an actual controversy between Petroff Amshen and Abourya and BT regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Abourya and BT in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1235.   The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1236.   Example of past checks that are the subject to the relief sought herein, include, but not limited to checks from TD Bank and JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
|  |  |  |
| 1557 | 6/9/2017 | $2,500 |
| 1566 | 6/30/2017 | $3,100 |
| 1655 | 9/7/2017 | $4,539 |
| 1701 | 1/9/2018 | $8,500 |
| 1813 | 7/10/2018 | $3,000 |
| 1897 | 8/6/2018 | $5,600 |
| 2106 | 9/5/2018 | $5,000 |
|  |  |  |
|  |  | **$32,239** |
|  |  |  |

1237.   Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Abourya and BT; never communicated with Abourya and BT regarding payment of services, had no knowledge that Abourya and BT were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit II, and Abourya and BT are precluded from engaging in any such acts in the future.

## ONE HUNDRED AND THIRTY-EIGHTH CAUSE OF ACTION
### Against Ebeido
### (Violation of 18 U.S.C. § 1962(c))

1238.   Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1239.   MHOH is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1240.   Ebeido knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of MHOH through a pattern of racketeering activity consisting of repeated

violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1241.   Furthermore, Ebeido knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of MHOH through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1242.   Upon information and belief, the property that Ebeido transferred and divided were proceeds of illegal activity.

1243.   Upon information and belief, Ebeido intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1244.   Upon information and belief, Ebeido knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Ebeido.

1245.   Upon information and belief, Ebeido knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1246.    Copies of checks used in the scheme by MHOH is attached hereto as Exhibit JJ.

1247.   As reflected therein, MHOH issued checks to Petroff Amshen from August 1, 2017 through May 7, 2018 totaling $13,985.00 The addresses on the checks as reflected therein vary as four different addresses were used as the purported corporate address.

1248.   None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1249.   Upon information and belief, MHOH's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Ebeido operates MHOH, inasmuch as MHOH is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for MHOH to function.

1250.   Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Ebeido, upon information and belief, continue to engage in the criminal activity described herein.

1251.   These inherently unlawful acts are taken by Ebeido in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1252.   Petroff Amshen has been injured as stated above.

## ONE HUNDRED AND THIRTY-NINTH CAUSE OF ACTION
### Against Ebeido and MHOH
### (Common Law Fraud)

1253.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1254.   MHOH and Ebeido intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1255.   The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the MHOH (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1256.   Ebeido and MHOH intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1257.   Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1258.   MHOH and Ebeido's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1259.   Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## ONE HUNDRED AND FORTIETH CAUSE OF ACTION
### Against Ebeido and MHOH
### (Unjust Enrichment)

1260.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1261.   As set forth above, Ebeido and MHOH have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1262.   Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Ebeido and MHOH, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1263.   Ebeido and MHOH have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Ebeido and MHOH voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**ONE HUNDRED AND FORTY-FIRST CAUSE OF ACTION**
**Against Ebeido and MHOH**
**(Declaratory Judgment)**

1264.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1265.   There is an actual controversy between Petroff Amshen and Ebeido and MHOH regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Ebeido and MHOH in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1266.   The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1267.   Example of past checks that are the subject to the relief sought herein, include, but not limited to a check from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---------|-------|--------|
|         |       |        |
| 291     | 8/1/2017 | $3,650 |
| 261     | 12/7/2017 | $3,885 |
| 500     | 5/7/2018 | $6,450 |
|         |       |        |
|         |       | **$13,985** |
|         |       |        |

1268. Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Ebeido and MHOH; never communicated with Ebeido and MHOH regarding payment of services, had no knowledge that Ebeido and MHOH were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit JJ, and Ebeido and MHOH are precluded from engaging in any such acts in the future.

## ONE HUNDRED AND FORTY-SECOND CAUSE OF ACTION
### Against Bobchynska
### (Violation of 18 U.S.C. § 1962(c))

1269. Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1270. Meridian is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1271. Bobchynska knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Meridian through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1272. Furthermore, Bobchynska knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Meridian through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1273. Upon information and belief, the property that Bobchynska transferred and divided were proceeds of illegal activity.

1274.   Upon information and belief, Bobchynska intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1275.   Upon information and belief, Bobchynska knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Bobchynska.

1276.   Upon information and belief, Bobchynska knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1277.    Copies of checks used in the scheme by Meridian is attached hereto as Exhibit KK.

1278.   As reflected therein, Meridian issued checks to Petroff Amshen on March 3, 2017 and December 26, 2018 totaling $5,577.00.

1279.   None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1280.   Upon information and belief, Meridian's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Bobchynska operates Meridian, inasmuch as Meridian is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Meridian to function.

1281.   Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Bobchynska, upon information and belief, continue to engage in the criminal activity described herein.

1282.   These inherently unlawful acts are taken by Bobchynska in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1283.   Petroff Amshen has been injured as stated above.

## ONE HUNDRED AND FORTY-THIRD CAUSE OF ACTION
### Against Bobchynska and Meridian
### (Common Law Fraud)

1284.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1285.   Meridian and Bobchynska intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1286.   The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Meridian (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1287.   Bobchynska and Meridian intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1288.   Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1289.   Meridian and Bobchynska's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1290.   Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### ONE HUNDRED AND FORTY-FOURTH CAUSE OF ACTION
**Against Bobchynska and Meridian**
**(Unjust Enrichment)**

1291.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1292.   As set forth above, Bobchynska and Meridian have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1293.   Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Bobchynska and Meridian, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1294.   Bobchynska and Meridian have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Bobchynska and Meridian voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

## ONE HUNDRED AND FORTY-FIFTH CAUSE OF ACTION
### Against Bobchynska and Meridian
### (Declaratory Judgment)

1295.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1296.   There is an actual controversy between Petroff Amshen and Bobchynska and Meridian regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Bobchynska and Meridian in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1297.   The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1298.   Example of past checks that are the subject to the relief sought herein, include, but not limited to checks from Capitol One:

| CHECK # | DATES | AMOUNT |
|---|---|---|
|  |  |  |
| 2184 | 3/29/2017 | $3,500 |
| 2284 | 10/26/2018 | $2,077 |
|  |  |  |
|  |  | $5,577 |
|  |  |  |

1299.   Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Bobchynska and Meridian; never communicated with Bobchynska and Meridian regarding payment of services, had no knowledge that Bobchynska and Meridian were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as

Exhibit KK, and Bobchynska and Meridian are precluded from engaging in any such acts in the future.

## ONE HUNDRED AND FORTY-SIXTH CAUSE OF ACTION
### Against Coleman
### (Violation of 18 U.S.C. § 1962(c))

1300.   Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1301.   MI is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1302.   Coleman knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of MI through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1303.   Furthermore, Coleman knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of MI through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1304.   Upon information and belief, the property that Coleman transferred and divided were proceeds of illegal activity.

1305.   Upon information and belief, Coleman intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1306.   Upon information and belief, Coleman knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Coleman.

1307. Upon information and belief, Coleman knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1308. Copies of checks used in the scheme by MI is attached hereto as Exhibit LL.

1309. As reflected therein, MI issued checks to Petroff Amshen on December 15, 2017 and December 20, 2017 totaling $2,975.00.

1310. None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1311. Upon information and belief, MI's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Coleman operates MI, inasmuch as MI is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for MI to function.

1312. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Coleman, upon information and belief, continue to engage in the criminal activity described herein.

1313. These inherently unlawful acts are taken by Coleman in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1314.   Petroff Amshen has been injured as stated above.

## ONE HUNDRED AND FORTY-SEVENTH CAUSE OF ACTION
### Against Coleman and MI
### (Common Law Fraud)

1315.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1316.   MI and Coleman intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1317.   The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the MI (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1318.   Coleman and MI intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1319.   Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1320.   Coleman and MI's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1321.   Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**ONE HUNDRED AND FOURTY-EIGHTH CAUSE OF ACTION**
**Against Coleman and MI**
**(Unjust Enrichment)**

1322.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1323.   As set forth above, Coleman and MI have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1324.   Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Coleman and MI, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1325.   Coleman and MI have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Coleman and MI voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

**ONE HUNDRED AND FOURTY-NINTH CAUSE OF ACTION**
**Against Coleman and MI**
**(Declaratory Judgment)**

1326.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1327.   There is an actual controversy between Petroff Amshen and Coleman and MI regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff

Amshen's reputation as a result of the past and future conduct of Coleman and MI in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1328.   The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1329.   Example of past checks that are the subject to the relief sought herein, include, but not limited to checks from TD Bank:

| CHECK # | DATES | AMOUNT |
|--------:|-------|-------:|
|  |  |  |
| 900 | 12/15/2017 | $1,675 |
| 876 | 12/20/2017 | $1,360 |
|  |  |  |

1330.   Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Coleman and MI; never communicated with Coleman and MI regarding payment of services, had no knowledge that Coleman and MI were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit LL, and Coleman and MI are precluded from engaging in any such acts in the future.

### ONE HUNDRED AND FIFTIETH CAUSE OF ACTION
**Against Abouhassan**
**(Violation of 18 U.S.C. § 1962(c))**

1331.   Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1332.   PTR is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

- 204 -

1333.   Abouhassan knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of PTR through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1334.   Furthermore, Abouhassan knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of PTR through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1335.   Upon information and belief, the property that Abouhassan transferred and divided were proceeds of illegal activity.

1336.   Upon information and belief, Abouhassan intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1337.   Upon information and belief, Abouhassan knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Abouhassan.

1338.   Upon information and belief, Abouhassan knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1339.    Copies of checks used in the scheme by PTR is attached hereto as Exhibit MM.

1340.   As reflected therein, PTR issued checks to Petroff Amshen from April 2, 2018 through December 3, 2018 totaling $18,997.00.

1341.   None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1342.   Upon information and belief, PTR's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Abouhassan operates PTR, inasmuch as PTR is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for PTR to function.

1343.   Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Abouhassan, upon information and belief, continue to engage in the criminal activity described herein.

1344.   These inherently unlawful acts are taken by Abouhassan in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1345.   Petroff Amshen has been injured as stated above.

## ONE HUNDRED AND FIFTY-FIRST CAUSE OF ACTION
### Against Abouhassan and PTR
### (Common Law Fraud)

1346.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1347.   PTR and Abouhassan intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1348.   The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the PTR (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1349.   Abouhassan and PTR intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1350.   Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1351.   Abouhassan and PTR's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1352.   Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### ONE HUNDRED AND FIFTY-SECOND CAUSE OF ACTION
**Against Abouhassan and PTR**
**(Unjust Enrichment)**

1353.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1354.   As set forth above, Abouhassan and PTR have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1355.   Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Abouhassan and PTR, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1356.   Abouhassan and PTR have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Abouhassan and PTR voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

### ONE HUNDRED AND FIFTY-THIRD CAUSE OF ACTION
**Against Abouhassan and PTR**
**(Declaratory Judgment)**

1357.   There is an actual controversy between Petroff Amshen and Abouhassan and PTR regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Abouhassan and PTR in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1358.   The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1359.   Example of past checks that are the subject to the relief sought herein, include, but not limited to a check from JP Morgan Chase:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 4148 | 12/3/2019 | $6,197 |
| 4229 | 11/10/2017 | $3,500 |
| 4267 | 4/2/2018 | $5,100 |
| 4284 | 6/28/2018 | $4,200 |
| | | |
| | | **$18,997** |
| | | |

1360.   Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Abouhassan and PTR; never communicated with Abouhassan and PTR regarding payment of services, had no knowledge that Abouhassan and PTR were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit MM, and Abouhassan and PTR are precluded from engaging in any such acts in the future.

## ONE HUNDRED AND FIFTY-FOURTH CAUSE OF ACTION
### Against John Doe
### (Violation of 18 U.S.C. § 1962(c))

1361.   Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1362.   AHP is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1363.   John Doe knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of AHP through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1364.   Furthermore, John Doe knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of AHP through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1365.   Upon information and belief, the property that John Doe transferred and divided were proceeds of illegal activity.

1366.   Upon information and belief, John Doe intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1367.   Upon information and belief, John Doe knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of John Doe.

1368.   Upon information and belief, John Doe knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1369.   Copies of checks used in the scheme by AHP is attached hereto as Exhibit NN.

1370.   As reflected therein, AHP issued checks to Petroff Amshen from July 14, 2017 through May 7, 2018 totaling $48,600.00.

1371.   None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1372.   Upon information and belief, AHP's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which John Doe operates AHP, inasmuch as AHP is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for AHP to function.

1373. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that John Doe, upon information and belief, continue to engage in the criminal activity described herein.

1374. These inherently unlawful acts are taken by John Doe in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1375. Petroff Amshen has been injured as stated above.

## ONE HUNDRED AND FIFTY-FIFTH CAUSE OF ACTION
### Against John Doe and AHP
### (Common Law Fraud)

1376. Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1377. AHP and John Doe intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1378. The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the AHP (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1379. John Doe and AHP intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1380.   Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1381.   John Doe and AHP's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1382.   Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## ONE HUNDRED AND FIFTY-SIXTH CAUSE OF ACTION
### Against John Doe and AHP
### (Unjust Enrichment)

1383.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1384.   As set forth above, John Doe and AHP have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1385.   Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of John Doe and AHP, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1386.   John Doe and AHP have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that John Doe and AHP voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

## ONE HUNDRED AND FIFTY-SEVENTH CAUSE OF ACTION
### Against John Doe and AHP
### (Declaratory Judgment)

1387.   There is an actual controversy between Petroff Amshen and John Doe and AHP regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of John Doe and AHP in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1388.   The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1389.   Example of past checks that are the subject to the relief sought herein, include, but not limited to checks from Santander:

| CHECK # | DATES | AMOUNT |
|---|---|---|
| | | |
| 2032 | 7/14/2017 | $7,500 |
| 106 | 12/15/2017 | $6,800 |
| 144 | 2/22/2018 | $5,200 |
| 159 | 3/8/2018 | $7,500 |
| 193 | 4/11/2018 | $7,500 |
| 221 | 5/7/2018 | $7,300 |
| | | |
| | | $48,600 |
| | | |

1390.   Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to John Doe and AHP; never communicated with John Doe and AHP regarding payment of services, had no knowledge that John Doe and AHP were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit NN, and John Doe and AHP are precluded from engaging in any such acts in the future.

## ONE HUNDRED AND FIFTY-EIGHTH CAUSE OF ACTION
### Against Lavelle
### (Violation of 18 U.S.C. § 1962(c))

1391.   Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1392.   Lavelle PC is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1393.   Lavelle knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Lavelle PC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1394.   Furthermore, Lavelle knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Lavelle PC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1395.   Upon information and belief, the property that Lavelle transferred and divided were proceeds of illegal activity.

1396.   Upon information and belief, Lavelle intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1397.   Upon information and belief, Lavelle knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Lavelle.

1398.   Upon information and belief, Lavelle knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1399.    A copy of a check used in the scheme by Lavelle PC is attached hereto as Exhibit OO.

1400.   As reflected therein, Lavelle PC issued a check to Petroff Amshen totaling $4,806.00.

1401.   None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1402.   Upon information and belief, Lavelle PC's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Lavelle operates Lavelle PC, inasmuch as Lavelle PC is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Lavelle PC to function.

1403.   Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Lavelle, upon information and belief, continue to engage in the criminal activity described herein.

1404.   These inherently unlawful acts are taken by Lavelle in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1405.   Petroff Amshen has been injured as stated above.

## ONE HUNDRED AND FIFTY-NINTH CAUSE OF ACTION
### Against Lavelle and Lavelle PC
### (Common Law Fraud)

1406.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1407.   Lavelle and Lavelle PC intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1408.   The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to the Lavelle PC (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1409.   Lavelle and Lavelle PC intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1410.   Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1411.   Lavelle and Lavelle PC's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1412.   Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## ONE HUNDRED AND SIXTIETH CAUSE OF ACTION
### Against Lavelle and Lavelle PC
### (Unjust Enrichment)

1413.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1414.   As set forth above, Lavelle and Lavelle PC have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1415.   Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Lavelle and Lavelle PC, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1416.   Lavelle and Lavelle PC have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Lavelle and Lavelle PC voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

## ONE HUNDRED AND SIXTY-FIRST CAUSE OF ACTION
### Against Lavelle and Lavelle PC
### (Declaratory Judgment)

1417.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1418.   There is an actual controversy between Petroff Amshen and Lavelle and Lavelle PC regarding more than $75,000.00 in past and future tax consequences as well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Lavelle and Lavelle PC in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1419.   The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1420.   Examples of a past check that are subject to the relief sought herein, include, but not limited to a check from Signature Bank:

| CHECK # | DATES | AMOUNT |
|---|---|---|
|  |  |  |
| 41313 | Aug-17 | $4,860 |
|  |  |  |

1421.   Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Lavelle and Lavelle PC; never communicated with Lavelle and Lavelle PC regarding payment of services, had no knowledge that Lavelle and Lavelle PC were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the checks that copies of which are attached as Exhibit OO, and Lavelle and Lavelle PC are precluded from engaging in any such acts in the future.

**ONE HUNDRED AND SIXTY-SECOND CAUSE OF ACTION**
**Against Elsanaa, Zhong and Libing**
**(Violation of 18 U.S.C. § 1962(c))**

1422.   Petroff Amshen incorporates, as though fully set forth herein, each and every allegation set forth above.

1423.  Elsanaa PC is an ongoing "enterprise" as defined in 18 U.S.C. § 1961(4), which engages in activities that affects interstate commerce.

1424.  Elsanaa, Zhon and Libing, knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Elsanaa PC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1341, based upon the continued use of interstate mails and transmission facilities in furtherance of their illegal scheme.

1425.  Furthermore, Elsanaa, Zhong and Libing, knowingly conducted and/or participated, directly or indirectly, in the conduct of the affairs of Elsanaa PC through a pattern of racketeering activity consisting of repeated violations of 18 U.S.C. § 1956 prohibiting laundering of monetary instruments.

1426.  Upon information and belief, the property that Elsanaa, Zhong and Libing transferred and divided were proceeds of illegal activity.

1427.  Upon information and belief, Elsanaa, Zhong and Libing intended to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 198.

1428.  Upon information and belief, Elsanaa, Zhong and Libing knew that the transactions and the money were never intended for Petroff Amshen and were designed in whole to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity of Elsanaa, Zhong and Libing.

1429.  Upon information and belief, Elsanaa, Zhong and Libing knew that the scheme and check cashing transactions were intended to avoid a transaction reporting requirement under State or Federal law.

1430.  A copy of a check used in the scheme by Elsanaa PC is attached hereto as Exhibit PP.

1431.   As reflected therein, Elsanaa PC issued a check to Petroff Amshen totaling $6,000.00.

1432.   None of the various and different signatures on the checks that purport to be signatures and endorsements of Petroff Amshen, were actually signed and endorsed by anyone at Petroff Amshen.

1433.   Upon information and belief, Elsanaa PC's business is racketeering activity, inasmuch as the enterprise was never entitled to those proceeds and existed solely for the purpose of laundering money. The predicate acts of mail fraud, wire fraud, and laundering of money instruments are the regular way in which Elsanaa, Zhong and Libing operate Elsanaa PC, inasmuch as Elsanaa PC is not engaged in any legitimate business, and acts of federal crimes such as mail fraud, wire fraud, laundering of monetary instruments, as well as crimes under state law such as criminal violations of forgery under New York Penal Law Section 170.00, falsifying of business records under New York Penal Law Section 175.00 and criminal violation of identity theft under New York Penal Law Section 190.77, are essential for Elsanaa PC to function.

1434.   Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud, wire fraud, and the laundering of monetary instruments implies a threat of continued criminal activity, as does the fact that Elsanaa, Zhong and Libing, upon information and belief, continue to engage in the criminal activity described herein.

1435.   These inherently unlawful acts are taken by Elsanaa, Zhong and Libing in pursuit of inherently unlawful goals; namely, the laundering of unlawfully obtained funds.

1436.   Petroff Amshen has been injured as stated above.

## ONE HUNDRED AND SIXTY-THIRD CAUSE OF ACTION
### Against Elsanaa, Zhong, Libing and Elsanaa PC
### (Common Law Fraud)

1437.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1438.   Elsanaa, Zhong, Libing and Elsanaa PC intentionally and knowingly concealed material facts from Petroff Amshen in the course of their submission of hundreds of fraudulently endorsed checks regarding payment of nonexistent legal serves.

1439.   The false and fraudulent acts of fraudulent concealment include: (i) claiming that Petroff Amshen provided services to Elsanaa PC (ii) claiming that Petroff Amshen received checks as reimbursement for nonexistent legal services (iii) the fraudulent endorsement of the name and signatures of Petroff Amshen on multiple checks and (iv) creating the false image that Petroff Amshen was engaged in its illegal activities and concealment of the proceeds generated by such activities.

1440.   Elsanaa, Zhong, Libing, and Elsanaa PC intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to generate fiscal gain and enrich their coffers, all at the expense of Petroff Amshen.

1441.   Petroff Amshen has been injured in its business and property by reason of the above-described conduct in an amount to be determined at trial.

1442.   Elsanaa, Zhong, Libing and Elsanaa PC's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Petroff Amshen to recover punitive damages.

1443.   Accordingly, by virtue of the foregoing, Petroff Amshen is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## ONE HUNDRED AND SIXTY-FOURTH CAUSE OF ACTION
### Against Elsanaa, Zhong, Libing and Elsanaa PC
### (Unjust Enrichment)

1444.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1445.  As set forth above, Elsanaa, Zhong, Libing and Elsanaa PC have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Petroff Amshen.

1446.   Upon information and belief, Petroff Amshen was harmed based on the improper, unlawful, and/or unjust acts of Elsanaa, Zhong, Libing, and Elsanaa PC, as Petroff Amshen incurred and will incur material tax payments and penalties and its professional reputation was damaged.

1447.   Elsanaa, Zhong, Libing and Elsanaa PC have been enriched at Petroff Amshen's expense by distribution of funds which constituted a benefit that Elsanaa, Zhong, Libing and Elsanaa PC voluntarily accepted and distributed amongst themselves, notwithstanding their improper, unlawful, and unjust money laundering scheme.

## ONE HUNDRED AND SIXTY-FIFTH CAUSE OF ACTION
### Against Elsanaa, Zhong, Libing and Elsanaa PC
### (Declaratory Judgment)

1448.   Petroff Amshen incorporates, as though fully set for the herein, each and every allegation set forth above.

1449.  There is an actual controversy between Petroff Amshen and Elsanaa, Zhong, Libing, and Elsanaa PC regarding more than $75,000.00 in past and future tax consequences as

well as harm to Petroff Amshen's reputation as a result of the past and future conduct of Elsanaa, Zhong, Libing, and Elsanaa PC in which they sully the name of Petroff Amshen via an apparent entanglement in a money laundering scheme.

1450.   The Defendants had no right to collect any money as a result of the fraudulent checks and have no right to ever use the name of Petroff Amshen in the future.

1451.   Examples of a past check that are subject to the relief sought herein, include, but not limited to a check from Bank of America:

| CHECK # | DATES | AMOUNT |
|---|---|---|
|  |  |  |
| 1004 | 1/13/2017 | $6,000 |
|  |  |  |

1452.   Accordingly, Petroff Amshen requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Petroff Amshen did not render legal services to Elsanaa, Zhong, Libing and Elsanaa PC; never communicated with Elsanaa, Zhong, Libing and Elsanaa PC regarding payment of services, had no knowledge that Elsanaa, Zhong, Libing and Elsanaa PC were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, including, but not limited to, the check that copy of which is attached as Exhibit PP, and Elsanaa, Zhong, Libing and Elsanaa PC are precluded from engaging in any such acts in the future.

## JURY DEMAND

1453.   Pursuant to Federal Rule of Civil Procedure 38(b), Petroff Amshen demands a trial by jury.

**WHEREFORE,** Plaintiff Petroff Amshen, LLP demands that a Judgment be entered in its favor:

1.      On the First Cause of Action against all the Defendants, a declaration pursuant to Declaratory Judgment Act 28 U.S.C.§§ 22011 and 2202, (a) that Petroff Amshen did not render legal services to the Defendants (b) never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money, (c) all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries, (d) any W-9 or 1099 form that reflects that Petroff Amshen received services from any of the Defendants is null and void, and (e) the Defendants are precluded from doing any such acts in the future.

2.      On the Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

3.      On the Third Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

4.      On the Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

5.      On the Fifth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

6.      On the Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

7.      On the Seventh Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

8.      On the Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

9.      On the Ninth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

10.     On the Tenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

11.     On the Eleventh Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

12. On the Twelfth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

13. On the Thirteenth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

14. On the Fourteenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

15. On the Fifteenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

16. On the Sixteenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

17. On the Seventeenth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

18.     On the Eighteenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

19.     On the Nineteenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

20.     On the Twentieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

21.      On the Twenty First Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

22.     On the Twenty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

23.     Twenty Third Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

24.     On the Twenty Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive

damages, together with costs and interest and such other and further relief as this Court deems just and proper.

25. On the Twenty Fifth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

26. On the Twenty Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

27. On the Twenty Seventh Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

28. On the Twenty Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper;

29. On the Twenty Ninth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

30.     On the Thirtieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

31.     On the Thirty First Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

32.     On the Thirty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

33.     On the Thirty Third Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

34.     On the Thirty-Forth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

35.     On the Thirty Fifth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

36.     On the Thirty Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive

damages, together with costs and interest and such other and further relief as this Court deems just and proper.

37.     On the Thirty Seventh Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

38.     On the Thirty Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

39.     On the Thirty Ninth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

40.     On the Fortieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

41.     On the Forty First Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

42.     On the Forty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

43.     On the Forty Third Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

44.     On the Forth Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

45.     On the Forty Fifth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

46.     On the Forty Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

47.     On the Forty Seventh Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

48.     On the Forty Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

49.     On the Forty Ninth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding

payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

50.     On the Fiftieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

51.     On the Fifty First Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

52.     On the Fifty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

53.     On the Fifty Third Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

54.     On the Fifty Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

55.     On the Fifty Fifth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

56.     On the Fifty Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

57.     On the Fifty Seventh Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

58.     On the Fifty Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

59.     On the Fifty Ninth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

60.     On the Sixtieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

61.     On the Sixty First Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

62.     On the Sixty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

63.     On the Sixty Third Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

64.     On the Sixty Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

65.     On the Sixty Fifth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

66.     On the Sixty Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

67.     On the Sixty Seventh Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

68.     On the Sixth Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive

damages, together with costs and interest and such other and further relief as this Court deems just and proper.

69.     On the Sixty Ninth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

70.     On the Seventieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

71.     On the Seventy First Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

72.     On the Seventy Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

73.     On the Seventy Third Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

74.     On the Seventy Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

75.     On the Seventy Fifth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

76.     On the Seventy Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

77.     On the Seventy Seventh Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

78.     On the Seventy Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

79.     On the Seventy Ninth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

80.     On the Eightieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

81.     On the Eighty First Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

82.     On the Eighty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

83.     On the Eighty Third Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

84.     On the Eighty Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

85.     On the Eighty Fifth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

86.     On the Eighty Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

87.     On the Eighty Seventh Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, together

with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

88.     On the Eighty Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

89.     On the Eighty Ninth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

90.     On the Ninetieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

91.     On the Ninety First Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

92.     On the Ninety Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

93.     On the Ninety Third Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding

payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

94.     On the Ninety Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

95.     On the Ninety Fifth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

96.     On the Ninety Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

97.     On the Ninety Seventh Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

98.     On the Ninety Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

99.     On the Ninety Ninth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

100.    On the One Hundredth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

101.    On the One Hundred and First Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

102.    On the One Hundred and Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

103.    On the One Hundred and Third Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

104.    On the One Hundred and Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

105.    On the One Hundred and Fifth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to

launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

106.    On the One Hundred and Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

107.    On the One Hundred and Seventh Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

108.    On the One Hundred and Eighth Cause of action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

109.    On the One Hundredth and Ninth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

110.    On the One Hundred and Tenth of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

111.    On the One Hundred and Eleventh Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00,

together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

112.    On the One Hundred and Twelfth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

113.    On the One Hundred and Thirteenth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

114.    On the One Hundred and Fourteenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

115.    On the One Hundred and Fifteenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

116.    On the One Hundred and Sixteenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

117.    On the One Hundred and Seventeenth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

118.    On the One Hundred and Eighteenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

119.    On the One Hundred and Nineteenth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

120.    On the One Hundred and Twentieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

121.    On the One Hundred and Twenty First Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

122.    On the One Hundred and Twenty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of

$1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

123.    On the One Hundred and Twenty Third Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

124.    On the One Hundred and Twenty Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

125.    On the One Hundred and Twenty Fifth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

126.    On the One Hundred and Twenty Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

127.    On the One Hundred and Twenty Seventh Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

128.    On the One Hundred and Twenty Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

129.    On the One Hundred and Twenty Ninth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

130.    On the One Hundred and Thirtieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

131.    On the One Hundred and Thirty First Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

132.    On the One Hundred and Thirty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

133.    On the One Hundred and Thirty Third Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to

launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

134. On the One Hundred and Thirty Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

135. On the One Hundred and Thirty Fifth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

136. On the One Hundred and Thirty Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

137. On the One Hundred and Thirty Seventh Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

138. On the One Hundred and Thirty Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

139. On the One Hundred and Thirty Ninth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00

together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

140.   On the One Hundred and Fortieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

141.   On the One Hundred and Forty First Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

142.   On the One Hundred and Forty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

143.   On the One Hundred and Forty Third Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

144.   On the One Hundred and Forty Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

145.     On the One Hundred and Forty Fifth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

146.     On the One Hundred and Forty Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

147.     On the One Hundred and Forty Seventh Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

148.     On the One Hundred and Forty Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

149.     On the One Hundred and Forty Ninth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

150.    On the One Hundred and Fiftieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

151.    On the One Hundred and Fifty First Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

152.    On the One Hundred and Fifty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

153.    On the One Hundred and Fifty Third Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

154.    On the One Hundred and Fifty Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

155.    On the One Hundred and Fifty Fifth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

156.    On the One Hundred and Fifty Sixth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

157.    On the One Hundred and Fifty Seventh Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

158.    On the One Hundred and Fifty Eighth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

159.    On the One Hundred and Fifty Ninth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

160.    On the One Hundred and Sixtieth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

161.    On the One Hundred and Sixty First Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to

launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

162.     On the One Hundred and Sixty Second Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00, plus costs and interest and such other and further relief as this Court deems just and proper.

163.     On the One Hundred and Sixty Third Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 together with treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

164.     On the One Hundred and Sixty Fourth Cause of Action, for compensatory damages in favor of Petroff Amshen in an amount to be determined at trial but in excess of $1,000,000.00 plus punitive damages, together with costs and interest and such other and further relief as this Court deems just and proper.

165.     On the One Hundred and Sixty Fifth Cause of Action, a declaration that Petroff Amshen did not render legal services to the Defendants; never communicated with the Defendants regarding payment of services, had no knowledge that the Defendants were using its name to launder money; all signatures of Petroff Amshen that purport to endorse the fraudulent checks are forgeries.

Dated: March 29, 2019
          Brooklyn, New York

                                        */s/ Yehuda C. Morgenstern*
                                        Yehuda C. Morgenstern
                                        Petroff Amshen LLP
                                        1795 Coney Island Avenue, Third Floor
                                        Brooklyn, New York 11230
                                        (718) 336-4200 (tel)