UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
PETROFF AMSHEN LLP,

             Plaintiff,                     REPORT AND
                                            RECOMMENDATION
     -against-                     19 CV 1861 (MKB)(RML)

ALFA REHAB PT PC, *et al.*,

             Defendants.
--------------------------------------------------X
LEVY, United States Magistrate Judge:

       By order dated October 28, 2019, the Honorable Margo K. Brodie, United States

District Judge, referred defendants' motions to dismiss to me for Report and Recommendation.  I

heard oral argument on January 22, 2020.[1]  For the reasons stated below, I respectfully

recommend that defendants' motions be granted and that this case be dismissed.

## BACKGROUND

       Plaintiff Petroff Amshen LLP ("plaintiff" or "Petroff Amshen"), a law firm, filed

its 251-page complaint on April 1, 2019 against more than seventy defendants.  It alleges that

defendants—primarily chiropractors, physical therapists and acupuncturists in New York and

New Jersey— engaged in "a criminal enterprise . . .  relating to the laundering of illicitly

obtained sums in excess of $600,000.000, whereby unbeknownst to Petroff Amshen, the

Defendants fraudulently used the name and reputation of Petroff Amshen as a vehicle in their

nefarious and illegal scheme, and thereby exposed Petroff Amshen to liability."

(Complaint, dated Mar. 29, 2019 ("Compl."), Dkt. No. 1, ¶¶ 1-2.)  According to plaintiff,

defendants conspired "via more than 50 corporate entities in their control" and "generated more

---

[1] Since defendants filed their motions, the court has held a number of conferences and some
defendants have been dismissed from this case.  In addition, the parties have conducted limited
discovery.

than 120 negotiable instruments, issued and signed by the Defendants . . . all made payable to Petroff Amshen." (Id. ¶ 3.) Defendants allegedly "distributed the checks amongst themselves – not to Petroff Amshen – and fraudulently endorsed the checks via the repeated forging of signatures of Petroff Amshen." (Id.) Defendants then allegedly presented the checks to defendant Cambridge Clarendon Financial Services, LLC, located in East Brunswick, New Jersey, which endorsed the checks to pay to the order of defendant Brunswick Bank & Trust Company. (Id. ¶¶ 3, 13(c).) According to plaintiff, this was a way for defendants to transfer substantial sums of money from their own corporate accounts "to liquid assets, i.e., cash" as part of a scheme to launder illicitly gained money. (Id. ¶¶ 4-5.)

The complaint also alleges that "in furtherance of the scheme and in order to substantiate the fraud, the Defendants created false W-9 forms claimed to be issued by Petroff Amshen to the Defendants and used the same to hold themselves out as having authority to act on behalf of Petroff Amshen." (Id. ¶ 6.) Plaintiff contends that defendants "[k]nowingly and with intent to further perpetrate illegal activity . . . wrote on the memo line of the checks, fraudulent statements such as 'legal fees' or 'legal services' to create the illusion that the check[s] were actually issued to Petroff Amshen." (Id.) Plaintiff avers that "the name of Petroff Amshen was merely used as a conduit to funnel funds amongst the Defendants that they did not want to be public knowledge, as the source of the funds were illegitimate and the Defendants wanted to conceal the sums from the taxing authorities." (Id. ¶ 14.)

Plaintiff asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and for common law fraud and unjust enrichment. In addition to compensatory and punitive damages, plaintiff seeks a declaration that:

(a) Petroff Amshen was never retained by any of the Defendants;

(b) Petroff Amshen had no knowledge of the existence of the Defendants;

2

(c)  Petroff Amshen had no knowledge of the criminal conduct and activities of the Defendants;

(d)  Petroff Amshen did not have any communication with the Defendants regarding the checks;

(e)  The checks were fraudulent, as the checks were never signed or endorsed by an owner, officer, and/or agent of Petroff Amshen;

(f)  Petroff Amshen did not receive any of the funds that were generated by the checks, directly or indirectly;

(g)  Any W-9 or 1099 Form, in the past and in the future, that ostensibly reflects that Petroff Amshen employed or used the services of any of the Defendants is a forgery and thereby null and void; and

(h)  Any check, in the past and in the future, issued by the Defendants and made payable to Petroff Amshen is a nullity and Petroff Amshen is not a holder in due course of any such check.

(Id. ¶ 12.)

Defendants argue that the complaint must be dismissed because, *inter alia*, (1) plaintiff lacks standing to assert a claim under RICO, since it has failed to allege a tangible injury, (2) the complaint does not allege RICO violations with the requisite specificity, and (3) the complaint fails to allege all of the elements of common law fraud or unjust enrichment.  (See Memorandum of Law of Defendant (Improperly Plead) Brunswick Bank & Trust Company in Support of Motion to Dismiss the Complaint, dated Aug. 30, 2019, Dkt. No. 141-1; Alfa Rehab Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint Pursuant to FRCP 12(B)(1) and 12(B)(6), dated Aug. 30, 2019, Dkt. No. 143; Affidavit of Donald S. Neumann, Esq. in Support of Dominick W. Lavelle's Motion to Dismiss, sworn to Sept. 27, 2019, Dkt. No. 146; Memorandum of Law in Support of Motion of Graig Granovsky Chiropractic PC, Graig Granovsky, and Ultimate Care Chiropractic PC to Dismiss, dated Aug. 29, 2019, Dkt. No. 157-2; Diamond Defendants' Memorandum of Law in Support of Motion to

3

Dismiss Plaintiffs' Complaint Pursuant to FRCP 12(B)(1) and 12(B)(6), dated Aug. 30, 2019,

Dkt. No. 160-2; Memorandum of Law in Support of Motion of Nathaniel Brex Roa Cayetuna,

JMP Rehab Care PT, Dalbir Kaur, NBC Health Physical Therapy PC, and Harkirtan Singh to

Dismiss for Failure to State a Claim, dated Aug. 30, 2019, Dkt. No. 161-2; Memorandum of Law

in Support of Motion to Dismiss for Failure to State a Claim by Eye On Well-Being Acupuncture

PC and Fleurette Harris, dated Aug. 30, 2019, Dkt. No. 163-2; Memorandum of Law in Support

of Motion of Defendants Body Acupuncture Care PC and Oksana Podhayetska to Dismiss for

Failure to State a Claim Pursuant to Fed. R. Civ. P 12(b)(6) and 12(b)(1), dated Aug. 30, 2019,

Dkt. No. 165-3.)

## DISCUSSION

### A.  Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the

complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's

favor.  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  The court's

function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial

but merely to determine whether the complaint itself is legally sufficient."  Goldman v. Belden,

754 F.2d 1059, 1067 (2d Cir. 1985).

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6)

is to test the legal sufficiency of a plaintiff's claims for relief.  Patane v. Clark, 508 F.3d 106,

112-13 (2d Cir. 2007).  A complaint will survive a motion to dismiss if it contains "sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft

v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." Id.  The assessment of whether a complaint states a plausible claim

for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.  Applying this standard, I will address each of plaintiff's claims.

    B.  Civil RICO

    "In order to bring suit under § 1964(c), a plaintiff must plead (1) the defendant's violation of 18 U.S.C § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation."  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 283 (2d Cir. 2006) (quotations, alterations and citation omitted).  A plaintiff asserting a civil RICO claim "has two pleading burdens. First, he must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962."  Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983).  Plaintiff must then "allege that he was 'injured in his business or property *by reason of* a violation of section 1962.'"  Id. (emphasis in original) (quoting 18 U.S.C. § 1964(c)).

    "RICO's use of the clause 'by reason of' has been held to limit standing to those plaintiffs who allege that the asserted RICO violation was the legal, or proximate, cause of their injury, as well as a logical, or 'but for,' cause."  Lerner, 459 F.3d at 283-84 (quoting Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc., 271 F.3d 374, 380 (2d Cir. 2001)); see also Anza v. Ideal Steel Supply Corp, 547 U.S. 451, 462 (2006) ("[A] claim is cognizable under § 1964(c) only if the defendant's alleged violation proximately caused the plaintiff's injury.") "The proximate-cause inquiry . . . requires careful consideration of the relation between the injury asserted and the injurious conduct alleged."  Anza, 547 U.S. at 462 (quotations and citation omitted).  "Failure to allege that the specifically identified RICO predicate acts proximately caused plaintiff's injury is ground for dismissal at the pleading stage."  Vicon Fiber Optics Corp. v. Scrivo, 201 F. Supp. 2d 216, 219 (S.D.N.Y. 2002) (citing First Nationwide Bank v. Gelt

5

Funding, 27 F.3d 763, 769 (2d Cir. 1994)).  I will address injury and causation first and then turn

to the alleged RICO violation.

        1.   Injury and Proximate Cause

      "RICO standing is a more rigorous matter than standing under Article III."

Denney v. Deutsche Bank AG, 443 F.3d 253, 266 (2d. Cir. 2006).  To establish standing under

§ 1962(c), a plaintiff must allege that it "suffered an injury to [its] 'business or property,' [and] . .

. that [its] injury was caused 'by reason of the RICO violation -- a standard . . . equated to the

familiar 'proximate cause' standard."  D'Addario v. D'Addario, 901 F.3d 80, 96 (2d Cir. 2018)

(quoting 18 U.S.C. § 1964(c)).   "[A] cause of action does not accrue under RICO until the

amount of damages becomes clear and definite."  First Nationwide Bank v. Gelt Funding Corp,

27 F.3d 763, 768 (2d Cir. 1994).

      "To survive the motion to dismiss, the pleadings must only allege facts that

affirmatively and plausibly suggest that Plaintiffs have standing to sue."  Lowell v. Lyft, Inc.,

352 F. Supp. 3d 248, 255 (S.D.N.Y. 2018) (quotations, alterations, and citation omitted). "[A]t

the pleading stage, standing allegations need not be crafted with precise detail, nor must the

plaintiff prove his allegations of injury."  Baur v. Veneman, 352 F.3d 625, 631 (2d Cir 2003).

That said, "'conclusory allegations of injury to pecuniary interest' will not suffice."  Beter v.

Murdoch, No. 17 CV 10247, 2018 WL 3323162, at *5 (S.D.N.Y. June 22, 2018) (quoting Paris

Partners, L.P. v. Russo, No. 94 CV 5684, 1995 WL 746585, at *2 (S.D.N.Y. Dec. 14, 1995)),

aff'd, 771 F. App'x 62 (2d Cir. 2019).  Rather, "a showing of 'injury' requires proof of *concrete

financial loss*."  Id. (citing McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 228 (2d Cir. 2008))

(emphasis added).  Thus, "a mere 'expectation'" of pecuniary harm cannot constitute injury to

business or property under RICO. Villoido v. BNP Paribas S.A., 648 F. App'x 53, 55 (2d Cir. 2016) (citation omitted).

Additionally, "generalized reputational harms . . . including the risk of future lost business commissions, are too speculative to constitute an injury to business or property." Kimm v. Chang Hoon Lee & Champ, Inc., 196 F. App'x 14, 16 (2d Cir. 2006) (citing Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 24 (2d Cir. 1990)); see also Santana v. Adler, No. 17 CV 6147, 2018 WL 2172699, at *7 (S.D.N.Y. Mar. 26, 2018) ([R]eputational harm is not a cognizable injury under RICO), report and recommendation adopted, 2018 WL 2170299 (S.D.N.Y. May 10, 2018); Mack v. Parker Jewish Inst. for Health Care & Rehabilitation, No. 14 CV 1299, , 2014 WL 5529746, at *6 (E.D.N.Y. Oct. 30, 2014) ("[Allegations that plaintiff] has not been able to find employment reflective of her level of education and experience . . . are too speculative to constitute an injury to business or property"). Rather, "'[p]roximate cause requires some direct relation between the injury asserted and the injurious conduct alleged,' and 'a link that is too remote, purely contingent, or indirect is insufficient.'" Empire Merchants, LLC v. Reliable Churchill LLLP, 902 F.3d 132, 141 (2d Cir. 2018) (quoting Hemi Grp., LLC v. City of New York, 599 U.S. 1, 17 (2010) (plurality opinion)) (alterations omitted). To determine whether there is a "direct relation," a court must evaluate "whether it would be difficult to determine how much the tortious conduct injured the defendant, as compared to other factors." Id. "A plaintiff 'does not have standing if he suffers an injury that was indirectly (and hence not proximately) caused by the racketeering activity or RICO predicate acts, even though the injury was proximately caused by some non-RICO violation committed by the defendants.'" Makowski v. United Bhd. of Carpenters & Joiners of Am., No. 08 CV 6150, 2010 WL 3026510, at *8 (S.D.N.Y. Aug. 2, 2010) (quoting Baisch v. Gallina, 346 F.3d 366, 373 (2d Cir. 2003)).

Plaintiff argues that it has been harmed by the alleged scheme because "Plaintiff has previously represented, with success, individuals and corporations who are strikingly similar to the Defendants." (Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss, dated Oct. 11, 2019 ("Pl.'s Mem."), Dkt. No. 166, at 1.) As a result, plaintiff claims that its "name and reputation has been sullied by the conduct of the Defendants, especially in the close-knit community of no-fault related medical providers in New York." (Id.) Additionally, plaintiff alleges, it "has already lost considerable and concrete business opportunities" and the loss is "ongoing." (Id.) Plaintiff contends that this harm

> is not general or merely speculative, but specific and concrete. A law firm's reputation has tangible value. By way of an example, it is recognized by the law that it is slander *per se* to allege, or create the appearance of, that a law firm is engaged in criminal activity such as money laundering. See, e.g., Flomenhaft v. Finkelstein, 127 A.D.3d 634, 638-39 (1st Dep't 2015) (slander per se when statements made that attorney "took your money and used it for his personal use").
>
> * * *
>
> [T]he actions of the Defendants have harmed Plaintiff's reputation to such an extent that it has been unable to retain any new no-fault provider clients — solely because said potential clients have indicated an unwillingness to "be associated with and/or presented by a firm whose reputation was sullied and marred by an involvement with a fraudulent check cashing and money laundering scheme." Plaintiff's damaged reputation will, in the year 2019 alone, cost Plaintiff an amount anywhere between $250,000.00 to $500,000.00 in revenue (without taking into account future lost earnings).

(Id. at 18-19.) It also argues that "but-for Defendants' actions, Plaintiff would not be subject to any potential tax penalty." (Id. at 21.) Plaintiff asserts, based on what it claims its accountants have advised, that it is subject to "potential tax liability in the amount of nearly $600,000.00." (Id. at 19.)

Despite plaintiff's claim that it has suffered a "specific and concrete" injury, plaintiff's complaint actually only alleges speculative reputational harm and possible future tax consequences.  Contrary to its argument, a RICO claim is not analogous to a defamation claim.  Further, even if plaintiff could prove that it has been "unable to retain any new no-fault provider clients," Pl.'s Mem. at 19, it would have to put forth facts to demonstrate that the lost income was directly caused by defendants' alleged racketeering activity, rather than the firm's relative inexperience in this practice area[2] or some other reason.

Moreover, the claim of a "potential" tax penalty if the checks are imputed as income to plaintiff is wholly theoretical.  Neither the Internal Revenue Service nor any state tax authority is alleged to have actually imposed a tax penalty on plaintiff relating to the forged checks.

In short, plaintiff does not demonstrate that it has suffered tangible damage to its business or property as a result of defendants' alleged conduct.  The complaint merely asserts speculative reputational harms and possible tax consequences.  Plaintiff therefore does not meet the requirement of alleging a concrete financial loss and does not have standing to assert a RICO claim.

2.   RICO Enterprise

In addition to injury and causation, in order to assert a viable claim that a defendant has violated the provisions of § 1962, a plaintiff must allege (1) participation in conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  Sedima v. Imrex Co., 473 U.S. 479, 496 (1985); see also Reich v. Lopez, 858 F.3d 55, 59 (2d Cir. 2017) (citation

---

[2] Although plaintiff does not state when it began representing clients in this practice area, it refers to its no-fault provider defense practice as "budding."  (Pl.'s Mem. at 21.)

omitted) ("RICO imposes liability on individuals working for an 'enterprise' that commits certain predicate crimes that amount to a 'pattern of racketeering activity.'") "[A]n enterprise includes any union or group of individuals associated in fact . . . for a common purpose of engaging in a course of conduct" and "is proved by . . . evidence that the various associates function as a continuing unit." Boyle v. United States, 556 U.S. 938, 944–45 (2009). "The enterprise must also exist 'separate and apart from the pattern of activity in which it engages.'" D. Penguin Bros. v. City Nat'l Bank, 587 F. App'x 663, 667-68 (2d Cir. 2014) (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)).

"[A]llegations of the RICO defendants' common purpose" that are "little more than a 'naked assertion' devoid of 'further factual enhancement'" are insufficient. D. Penguin Bros., 587 F. App'x at 668 (quoting Iqbal, 556 U.S. at 678). Where a plaintiff "fail[s] to provide . . . any solid information regarding the 'hierarchy, organization, and activities of [an] alleged association in fact'" and "fail[s] to explain each participant's role in the alleged course of fraudulent or illegal conduct," there is "no basis to support the conclusion that [the individuals] were 'associated together for a common purpose of engaging in a course of conduct.'" First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 174-75 (2d Cir. 2004) (citations omitted); see also BWP Media USA Inc. v. Hollywood Fan Sites, LLC, 69 F. Supp. 3d 342, 360 (S.D.N.Y. 2014) (where plaintiff fails to allege "the roles each Defendant played and the actions they took," there is no "information from which it could be concluded that Defendants function as a unit or that they shared a common purpose").

In addition to pleading the existence of an enterprise, "a civil RICO plaintiff must also plead facts from which it can be inferred that each of the defendants participated, directly or indirectly, in the conduct of the enterprise's affairs." Elsevier, Inc. v. W.H.P.R., Inc., 692 F.

Supp. 2d 297, 307 (S.D.N.Y. 2010).  "In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs."  Reves v. Ernst & Young, 507 U.S. 170, 179 (1993).  In other words, "[f]or purposes of civil RICO, it is not enough to allege that a defendant provided services that were helpful to an enterprise, without alleging facts that, if proved, would demonstrate some degree of control over the enterprise."  Elsevier, 692 F. Supp. 2d. at 307-08 (citation omitted); see also Aerowest GmbH v. Freitag, No. 15 CV 2894, 2016 WL 3636619, at *3 (E.D.N.Y. June 28, 2016) ("While each defendant need not have primary responsibility for the functioning of the enterprise, each must, at least, have some part in directing the affairs of the alleged unit.").

The only common thread among the allegations in the complaint is that no defendant has ever retained plaintiff to provide legal services.  However, nowhere in the complaint does plaintiff allege that the defendants were even aware of each other's existence, let alone that they agreed to participate with each other in a criminal enterprise or that any of them directed the affairs of the alleged racketeering enterprise.  The complaint therefore fails to allege a RICO enterprise.

### 3.  RICO Predicate Acts

Moreover, to plead a "pattern" of racketeering activity, a plaintiff must allege at least two predicate acts of racketeering activity occurring within a ten-year period. 18 U.S.C. § 1961(5).  "Racketeering activity" is defined to include a variety of federal and state crimes, including murder, kidnapping, gambling, arson, robbery, bribery, extortion, wire fraud, and mail fraud.  See 18 U.S.C. § 1961(1). Plaintiff alleges that defendants engaged in the predicate acts of mail and wire fraud.  (Compl. ¶¶ 151, 186, 221, 258, 293, 329, 363, 398, 432, 467, 532, 629, 660, 722, 753, 815, 846, 908, 939, 970, 1032, 1063, 1094, 1125, 1155, 1186, 1218, 1249, 1311, 1342, 1372, 1402, 1433.)  "The elements of mail or wire fraud are (i) a scheme to defraud (ii) to

get money or property, (iii) furthered by the use of interstate mail or wires." United States v. Autuori, 212 F.3d 105, 115 (2d Cir. 2000) (citation omitted).  "As to the first element, a plaintiff must demonstrate (i) the existence of a scheme to defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the defendant, and (iii) the materiality of the misrepresentations." Fuji Photo Film U.S.A., Inc. v. McNulty, 640 F. Supp. 2d 300, 310 (S.D.N.Y. 2009) (citing Autuori, 212 F.3d at 115).  "[W]hen fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts or omissions complained of by each defendant."  Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000) (citations omitted), aff'd, 2 F. App'x 109 (2d Cir. 2001); see DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.").

Plaintiff's complaint does not provide the detail about each individual defendant's alleged role in the purported enterprise, or about the alleged scheme to defraud, that RICO requires.  Instead, it accuses all of the defendants, collectively, of forging the 120 negotiable instruments at issue.  (See generally Compl.)  It therefore fails to plead the elements of RICO with the requisite particularity.

4.   Continuity

Finally, in order to demonstrate a pattern of racketeering, plaintiff's complaint must demonstrate that "the defendants (1) committed at least two predicate acts of racketeering within ten years of one another . . . ; (2) that these racketeering predicates are interrelated; and (3) that they reveal continued, or the threat of continued, racketeering activity."  Leung v. Law, 387 F. Supp. 2d 105, 123 (E.D.N.Y. 2005) (citing United States v. Diaz, 176 F.3d 52, 93 (2d Cir. 1999)).  "To establish a RICO pattern it must also be shown that the predicates themselves

12

amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 240 (1989) (emphasis in original). This continuity requirement may be satisfied by either an open-ended or closed-ended pattern of racketeering activities. Id. at 241.

Open-ended continuity describes "past conduct that by its nature projects into the future with a threat of repetition." Id. The Second Circuit has directed district courts to look first to the nature of the predicate acts alleged or to the nature of the enterprise at whose behest the predicate acts were performed in assessing whether a threat of continuity was presented by an open-ended series of predicate acts. See, e.g., GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 466 (2d Cir. 1995); United States v. Aulicino, 44 F.3d 1102, 1111 (2d Cir. 1995); United States v. Kaplan, 886 F.2d 536, 542 (2d Cir. 1989). "[A]n inherently unlawful act performed on behalf of an enterprise whose business is racketeering activity would automatically give rise to the requisite threat of continuity." GICC Capital, 67 F.3d at 466 (citing Aulicino, 44 F.3d at 1111). Similarly, where the defendants have engaged in acts that are "inherently unlawful," such as murder and kidnapping, the threat of continuity is also deemed to be present. Aulicino, 44 F.3d at 1111, 1113. Where the nature of the conduct or the enterprise does not by itself suggest that the racketeering acts will continue, courts must look to other factors, such as the number of victims, the breadth of the scheme, and the defendants' "continuing intent and ability to participate in various ways in the corruption of the enterprise" in determining whether the defendants' activities posed a threat of continuity. Kaplan, 886 F.2d at 542–43. A fraudulent scheme that targets a single business or person—such as the one alleged in this case— is deemed to be "inherently terminable," and thus incapable of presenting an open-ended threat of

continuing criminal activity.  GICC, 67 F.3d at 466.  See also Efron v. Embassy Suites, 223 F.3d 12, 17-21 (1st Cir. 2000).

A plaintiff can also satisfy the continuity element of the RICO statute's pattern requirement by alleging that the defendants were engaged in a closed-ended pattern of racketeering activities. Closed-ended continuity describes a finite, pre-litigation period of repeated conduct over a time period of substantial duration.  H.J., Inc., 492 U.S. at 242. Predicate acts extending over only a few weeks or months do not satisfy the substantial duration element.  Id.; see also GICC, 67 F.3d at 467 (collecting cases and observing that a period of less than two years rarely will satisfy the substantial duration requirement); Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 184 (2d Cir. 2008) ("Since the Supreme Court decided H.J. Inc., we have never held a period of less than two years to constitute a substantial period of time." (quotations and citation omitted).)

Plaintiff alleges that the enterprise commenced on or about January 1, 2016 and continued until the filing of the complaint on April 1, 2019, a period of more than three years. (See Compl. ¶¶ 15, 112.)  Plaintiff also alleges that there were more than 120 negotiable instruments issued by a group of individuals and corporations.  (See id.  ¶¶ 2-3.)  However, the three-year period does not apply to all defendants.  For example, the complaint alleges that defendant JMP Rehab Care PT PC issued one check payable to Petroff Amshen on December 30, 2018 for $4,120.  (Compl. ¶ 844, Ex. W.)  For defendants Eye On Well-Being Acupuncture PC and Body Acupuncture Care PC, the complaint makes no allegations whatsoever about checks being issued to anyone.  (See Compl. ¶¶ 73, 83.)  By artificially grouping all of the defendants together into one alleged enterprise, plaintiff seeks to hold all of the defendants liable for all of

the alleged acts from the issuance of the first check to the last.  This is insufficient to establish either open-ended or closed-ended continuity.

For all of the above reasons, plaintiff does not state a claim under RICO, and I respectfully recommend that the RICO claim be dismissed.

C.  Common Law Claims

Where a plaintiff lacks a valid federal claim, a district court has discretion to decline to exercise supplemental jurisdiction over the plaintiff's pendent state-law claims.  E.g., Matican v. City of N.Y., 524 F.3d 151, 154-55 (2d Cir. 2008) (citing Kolari v. New York–Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006)); Klein & Co. Futures, Inc. v. Board of Trade, 464 F.3d 255, 262 (2d Cir. 2006) ("'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining jurisdiction over the remaining state-law claims.'") (quoting Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)); see also 28 U.S.C. § 1367(c)(3).  Plaintiff concedes that, because there is not complete diversity between the plaintiff and all of the defendants, this court cannot exercise diversity jurisdiction under 28 U.S.C. § 1332.  (See Pl.'s Mem. at 28.)  Therefore, if the RICO claims are dismissed, the common law fraud and unjust enrichment claims may be dismissed, as well.

Nonetheless, I will briefly address the state law causes of action:

1.  Common Law Fraud

"Under New York law, a plaintiff alleging fraud must show five elements by clear and convincing evidence: '(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of plaintiff; and (5) resulting damage to the plaintiff.'"  Herzfeld v. JPMorgan Chase Bank, N.A., 354 F. App'x 488, 489 (2d Cir. 2009) (quoting Crigger v. Fahnestock & Co., 443 F.3d 230,

234 (2d Cir. 2006)). Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard for fraud claims, requiring that a plaintiff's fraud allegations: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 197 (2d Cir. 2013) (citation omitted); Zutel v. Wells Fargo Bank, N.A., No. 12 CV 3656, 2014 WL 4700022, at *6 (E.D.N.Y. Sept. 22, 2014); see FED. R. CIV. P. 9(b).

Plaintiff's fraud claim fails on the reliance and damages elements. First, it is well settled that "fraud claims may not be premised on false statements on which a third party relied." Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V., 400 F. App'x 611, 613 (2d Cir. 2010). A plaintiff thus "does not establish the reliance element of fraud for purposes of . . . New York law by showing only that a third party relied on a defendant's false statements." Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo, 148 F.3d 194, 196 (2d Cir. 1998) (citations omitted). Here, the complaint does not allege that plaintiff itself relied in any way on the forged checks, or that it was induced to act or refrain from acting based on defendants' false representations.

Second, under New York law, a plaintiff alleging fraud is only entitled to recover "out-of-pocket" expenses relating to its actual pecuniary loss. See Dress Shirt Sales, Inc. v. Hotel Martinique, 190 N.E.2d 10, 12 (N.Y. 1963); Raymond Corp. v. Coopers & Lybrand, 482 N.Y.S.2d 377, 379 (3d Dep't 1984). That loss must be the direct, immediate, and proximate result of the fraud. Goldberg v. Mallinckrodt, Inc., 792 F.2d 305, 307 (2d Cir. 1986). The damages must also be independent of other causes. Kregos v. Associated Press, 3 F.3d 656, 665 (2d Cir. 1993); Bennett v. United States Tr. Co., 770 F.2d 308, 316 (2d Cir. 1985). Here,

16

plaintiff does not claim to have experienced any "out-of-pocket" expense or pecuniary loss as a result of anything any defendant is alleged to have done.  As explained above, plaintiff's claim that it has lost potential clients as a result of the fraudulent scheme is not supported by specific allegations.  Therefore, plaintiff has not established a claim for fraud.

2.  Unjust Enrichment

To state a claim for unjust enrichment under New York law, a plaintiff must allege that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004).  "The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in equity and good conscience should be paid to the plaintiff." Corsello v. Verizon New York, Inc., 967 N.E.2d 1177, 1185 (N.Y. 2012) (citations and internal quotation marks omitted).  Relief for unjust enrichment is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  Id.  "[C]laims of unjust enrichment will require individualized proof as to each plaintiff's situation and an individualized analysis of 'equity' and 'good conscience.'" Dungan v. Academy at Ivy Ridge, 249 F.R.D. 413, 427 (N.D.N.Y. 2008), abrogated in part on other grounds, Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 658-59 (2008).

Again, this claim fails because the complaint does not allege that defendants were enriched *at plaintiff's expense*.  Plaintiff does not maintain that any defendant owes it money. Therefore, plaintiff does not state a claim for unjust enrichment.

17

D.  Declaratory Judgment

Finally, plaintiff argues that, even without a RICO claim, it is entitled to a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, to "remove the stain" on its reputation resulting from defendants' alleged actions.  (Pl.'s Mem. at 21-27.) However, the Declaratory Judgment Act does not create an independent cause of action.  See In re Joint E. & S. Dist. Asbestos Litig., 14 F.3d 726, 731 (2d Cir. 1993).  Rather, "[i]ts operation is procedural only—to provide a form of relief previously unavailable."  Id. (citation omitted). Such procedural authorization "does not extend to the declaration of rights that do not exist under law."  Chevron Corp. v. Naranjo, 667 F.3d 232, 244 (2d Cir. 2012).  In other words, a party may not obtain relief based on the Declaratory Judgment Act standing alone—one can only obtain relief "based on other laws that the defendant allegedly violated."  In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 247 F.R.D. 420, 422-23 (S.D.N.Y. 2007).  Because the complaint does not state a claim under RICO or raise any other colorable claim for relief, plaintiff "has no independent substantive claim" against the defendants that could entitle it to a declaratory judgment.  Johnson v. Magnolia Pictures LLC, No. 18 CV 9337, 2019 WL 4412483, at *3 (S.D.N.Y. Sept. 16, 2019) (quotations and citation omitted).  "Therefore, the cause of action for declaratory relief is appropriately dismissed . . . for failure to state a claim."  Id. (quotations and citation omitted); see also Araujo v. Macaire, No. 16 CV 9934, 2020 WL 1816189, at *6-8 (S.D.N.Y. Apr. 10, 2020).

**CONCLUSION**

For the reasons stated above, I respectfully recommend that plaintiff's complaint be dismissed with prejudice.  Any objections to this Report and Recommendation must be filed electronically within fourteen (14) days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,


_____/s/_____
ROBERT M. LEVY
Unites States Magistrate Judge

Dated:   Brooklyn, New York
           December 14, 2020